ELI G. RUNALS

*v.*

GEORGE F. HARDING *et al.*

83    75
164   311

83        75
97a ² 91
97a ¹238

1. COLLATERAL SECURITY—*whether holder of is liable for loss.* Where an obligation on a third party is placed in the hands of a creditor by a debtor, as collateral security for the debt, and such third person is of doubtful solvency, and absent from the State a great while, and, when called on, claims that the obligation has been altered, and the debtor assents to a delay in proceeding against him, and the claim on such third party becomes lost, the creditor will not be guilty of such negligence, in respect to the security, as to make the loss his own.

2. RECEIVER—*when proper to appoint.* Where a creditor's bill charges that the debtor has choses in action, etc., in his possession, and asks for a discovery, and the debtor suffers the bill to be taken as confessed, it is not error to enjoin the debtor from disposing of his property, and to appoint a receiver to take charge of the same.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was a creditor's bill, brought against plaintiff in error, Eli G. Runals, by George F. Harding, executor of Abner C. Harding, deceased, who had purchased the judgment in question of DeWitt, Richard and Hannah Campbell, who, as executors of Alonzo Campbell, had recovered the judgment against Runals, upon an indebtedness originally due from him to Alonzo Campbell.

Runals filed a plea alleging that the judgment was recov-

ered upon certain notes and acceptances given by Runals to Alonzo Campbell for the accommodation of one R. M. Whipple, originally amounting to about $15,000; that, in the spring of 1867, notes to the amount of $48,000, secured by mortgages on real estate, were placed by Whipple in the hands of Alonzo Campbell, as collateral security to Runals' indebtedness, under an agreement between Campbell and Runals, that Campbell would first exhaust such securities, and would only hold Runals in the event of their proving insufficient to pay the notes and acceptances of Runals; that, in the spring of 1868, Campbell placed the securities in Runals' hands, directing him to give them to Josiah Lombard, to be converted into money, and to take Lombard's agreement to pay the Runals debt to Campbell, promising that he, Campbell, would hold Lombard's agreement in lieu of the securities, and upon the same terms, and would first exhaust that before proceeding against Runals; that Runals carried out this arrangement with Lombard, and took from him this agreement:

"$38,000.                    CHICAGO, *July* 10, 1868.

Memorandum of agreement by and between Eli G. Runals, of Kenosha, Wis., and Josiah Lombard, of Chicago, Ill., viz: Said Runals now holds in his hands certain notes and mortgages secured on property in the city of Chicago, and lands in Cook county, Illinois, to the amount of (38) thirty-eight thousand dollars and int., which mortgage is to secure certain notes given by said Runals, and now in the hands, or belonging to the estate of Alonzo Campbell, now deceased, and amounting to about eighteen thousand dollars and int., together with other notes more fully described in a certain bond of R. M. Whipple to said Runals dated about the 15th day of April, 1867.

"Now, in consideration of the delivery of said mortgage being turned over and transferred to said Lombard by request of said Whipple, said Lombard hereby agrees to settle, pay off and deliver said notes to said Runals within one year from the date hereof, and save said Runals harmless from all costs from said notes.
                                    JOSIAH LOMBARD.

*Witness,* R. M. WHIPPLE."

That on the 5th day of July, 1869, he (Runals) assigned said agreement to the executors of Alonzo Campbell, under an agreement then made with them, that they would first look to Lombard, upon his agreement, for the payment of Runals' indebtedness due to them, and would only hold Runals liable thereon in case the same could not be made out of Lombard upon his agreement, after due diligence to collect the same; that afterwards, on or about April 20, 1870, the executors stated to Runals that, before they could proceed against Lombard, it would be necessary to have a judgment in their favor against Runals on his indebtedness, and an execution returned unsatisfied, and if he would permit such judgment, they would have an execution returned unsatisfied, and immediately proceed against Lombard; that they had found property belonging to Lombard in the county, out of which they could make the amount of said indebtedness; and it was thereupon agreed that they should bring suit against Runals, and obtain judgment, and he should make no defense to the suit; that, in pursuance of the agreement, the suit was brought, Runals made no defense, and the judgment in question was recovered.

The plea further avers that the executors have never commenced any proceeding against Lombard to recover the said indebtedness against him; that Lombard, at the time said securities were placed in his hands, and ever since, down to and after the obtaining of said judgment, was abundantly able to pay said indebtedness, and that it could have been made out of him by the proper legal proceedings; and that, after the securities were turned over to Lombard, and during the years 1868 and 1869, he converted the same into cash, and realized therefrom the sum of $50,000.

A replication was filed to the plea, and upon hearing on proofs taken, the court below found that the plea was untrue, and decreed in favor of the complainants. Runals brings his writ of error to reverse the decree.

Mr. J. L. High, for the plaintiff in error.

Mr. J. A. Sleeper, for the defendants in error.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

It is insisted that the court below erred in finding the plea untrue.

The placing of the collateral securities for Runals' indebtedness in the hands of Alonzo Campbell, and his delivery of them back to Runals for the purpose, and under the agreements as alleged in the plea, is testified to by Whipple, and Williams, his clerk.

There is no direct contrary testimony, but there is evidence quite inconsistent with the facts that Runals acted merely as the agent of Alonzo Campbell to put the securities for him in the hands of Lombard, and take his agreement to Campbell to pay Runals' indebtedness to him, and that Campbell agreed to take such agreement of Lombard in lieu of the securities, and not resort to Runals only in the event of first having recourse to Lombard, and the inability to collect from him.

The evidence shows that the securities belonged to Whipple, and were placed in the hands of Alonzo Campbell in April, 1867, and he was to wait a year on Runals. Toward the end of the year, Campbell's ill health disabling him from attending to the securities, they were delivered to Runals, to be placed in the hands of Lombard, for him to realize from them.

Alonzo Campbell died May 25, 1868. DeWitt Campbell, his brother, testifies, that in May, 1868, at the request of his brother Alonzo, he had an interview and conversation with Runals in regard to his paper, to get it renewed; that Runals then told him that he held securities, notes and mortgages on property in Chicago, to secure this indebtedness of his to Alonzo Campbell, and another equally large debt Whipple owed him, which should not go out of his hands till this debt to Campbell was paid; that he had tried to have Alonzo

Campbell take the securities in payment of the debt, but the latter refused to do so.

This conversation was after Alonzo Campbell had delivered the securities to Runals. DeWitt and Richard Campbell were the executors of Alonzo Campbell. DeWitt Campbell testifies to another conversation with Runals, in regard to his debt, after the death of Alonzo Campbell; that Runals then repeated the same statement that he had the securities to pay the debt, and they should never leave his possession till it was paid; and the witness says that, at neither of these conversations did Runals intimate that Alonzo Campbell had ever held the notes and mortgages as security. These statements and conduct of Runals are inconsistent with the idea of the alleged agency on the part of Runals, and agreement of Alonzo Campbell as to the Lombard agreement. The written agreement which Runals took from Lombard is inconsistent therewith. It is set out in the plea, and purports to be an agreement between Runals and Lombard, and says that Runals holds in his hands the securities to secure notes given by him, and Lombard agrees to settle and pay off these notes of Runals, and deliver them to him within one year. The entire agreement is with Runals, and for his benefit; there is no trace of any agency on his part, and no intimation that the estate of Campbell has any interest in the securities, or that the agreement is for its benefit; the only reference whatever that there is to it, being only in identification of the notes which Runals was owing—as notes then in the hands of and belonging to the estate of Alonzo Campbell. Runals did not hand over this contract to the executors, as an agent would, nor even disclose its existence to them, as the executors testify, until the last days of June or the first of July, 1869, when, after repeated applications had been made by the executors to Runals for payment, DeWitt Campbell, as he testifies, suggested to Runals that he should bring in the securities he was speaking of as being held by him, and as sufficient to pay the debt, that the executors might look them over and see if they could not make something out of them, when Runals informed him that he had

given them to Lombard, and got his bond to pay the debt; DeWitt Campbell then asked him if there would be any objection to let them have the bond; he answered, none, and that he would bring it down the next time he came; that he did so, and assigned it over by his written assignment, July 5, 1869, Runals having thus held it, its existence undisclosed, about one year.

We think there was enough to warrant the finding that there was no such agency, as alleged, of Runals in the delivery of the securities to Lombard and taking his agreement, and that there was no such agreement on the part of Alonzo Campbell, as alleged, in respect to this Lombard agreement.

It is then alleged that there was a similar agreement made by DeWitt Campbell, one of the executors, at the time of the assignment to the executors of this Lombard contract, July 5, 1869. Runals testifies to such an agreement. DeWitt Campbell denies it. This appears to be the sum of the testimony on this point. It did not require a finding in favor of such an agreement. And it may be remarked that, if the assignment of the Lombard contract had been made under the condition alleged, a very proper place for it to appear would have been in the written assignment itself, but nothing of the kind appears there, it being a simple, absolute assignment of the contract.

As to the alleged circumstances under which the judgment was obtained, and agreement that it should not be enforced unless it should turn out that the whole amount could not be made by the executors out of the property of Lombard, Runals testifies thereto as they are alleged.

DeWitt Campbell, with whom Runals testifies the transaction was had and agreement made, utterly denies the same.

Whipple and Williams testify to admissions of DeWitt Campbell to the same purport with the facts testified to by Runals.

Richard Campbell, the co-executor, testifies that he never knew or heard of any such arrangement, though he had con-

versations with Runals before and after the judgment, in reference to the judgment, and in respect to obtaining it.

Mr. Whiton, the attorney who held for collection the papers upon which the judgment against Runals was rendered, testifies that he never knew or heard of any such arrangement as alleged; that, in conversation with Runals about putting his notes in judgment, he thinks he did state to him that Lombard's agreement was one of indemnity, and to make certain the precise amount of Lombard's liabilities, the claim of the estate should be put in judgment, as such a judgment would show the precise amount Runals would be entitled to recover from Lombard on his agreement; but that he never gave Runals to understand they would not proceed against him, or would stay the collection of the judgment until they had first had recourse against Lombard; and he says that, at the time Runals was sued, they had lost all hopes that Lombard would be possessed of property that could be reached to pay the debt.

This would show the improbability that there would have been made such an agreement in respect of the judgment, as alleged.

As tending in further disproof of such an agreement, as well as the other ones alleged, is a letter written by Runals to DeWitt Campbell immediately upon the commencement of this suit by creditor's bill, wherein, in reference to such suit, occurs the following: "I can not see the object of a suit, as you now have a judgment against me, and as I before said, if you want any property I have, you can have it without costs. I am now trying to save, and get something out of the Durkee House ruins, and if I can, will let you have it to apply on the Whipple or Lombard claim, and then if you collect of Lombard, you pay me back." Not a word of intimation that there should have been any prior resort to Lombard, as there naturally would have been, had there been any such previous requirement.

The executors both testify that, on their many applications made to Runals for payment, he was always willing to pay the

debt, and promised to do so at different stated times, but wanted them to delay proceeding against him, and resort to Lombard, but that he never broached the idea that they were under any obligation to do so; and that, in compliance with Runal's request, in favor to him, they did delay for some time bringing suit against him, and made inquiries for property of Lombard, with a view of proceeding against him.

It is claimed that the *laches* in failing to proceed against Lombard, and Lombard's subsequent insolvency, and the loss of the securities, are a bar to the enforcement of the judgment.

· The plea does not seem to allege the insolvency of Lombard, and thus show loss in this respect, but, waiving this, we will consider whether there is any just foundation for this claim.

The securities were all disposed of by Lombard, with the assent and aid of Whipple, to whom they belonged, and some $41,000 realized therefrom during the years of 1868 and 1869, the last one having been disposed of in January, 1869, while Runals held the Lombard agreement, and several months before he assigned it to the executors; so that there is no neglect to be complained of as to the securities, and it can only be in respect of the Lombard agreement, in not prosecuting it. De Witt Campbell testifies that, very soon after the assignment of that agreement to the executors was made, he called upon Lombard in regard to it, presenting the agreement, when Lombard at once declared it to be a forgery—that, since he signed it, there had been an alteration made in it from $1800 to $18,000 (the amount of the Runals notes he was to take up), and that he would not pay anything. Campbell immediately communicated the result to Runals, and the two went and saw Lombard, and he pronounced the instrument to be a forgery, in the respect named, to them.

· Lombard, afterward, suggested that the matter lie until Whipple came back, who was then away, expressing the opinion that Whipple would arrange it when he returned. Runals appears to have assented to this. The original agreement has been sent up to us for inspection. From its inspec-

tion, we are satisfied it was changed from $1800 to $18,000, but whether before or after execution, we are unable to say. Whipple did not return for a year and a half, until about January, 1871; and soon after the assignment, Lombard went away, out of the State, and remained there, so that no service of process could be made on him. This judgment against Runals was rendered at the June term, 1870, and Mr. Whiton states that at that time he and the executors had lost all hopes that Lombard would be possessed of property that could be reached to pay the debt. He states that they had made a good deal of inquiry as to the responsibility and whereabouts of Lombard; that they learned he had left Chicago and become embarrassed, and that it was not probable anything could be made of him on execution.

It appears, however, that, during the time, one debt of several thousand dollars was made from Lombard, by proceeding in attachment against him. It may be that, if Lombard had been proceeded against, and all legal proceedings available been made use of against him, the debt might have been collected, and that, from the want of such prosecution, the debt has been lost. The question, then, is, which of the parties should bear the loss.

It seems hardly reasonable to require that the executors should have taken upon themselves the burden of a law suit, involving the litigation of a disputed question of forgery of the instrument sued upon. It would have been more reasonable that Runals himself should have assumed the brunt of such a prosecution. He might have done so, notwithstanding the assignment, suing in his name for the use of the executors, as the instrument of agreement was not assignable at law, and the assignment of it to the executors gave them but an equitable right in it. The executors could have had no objection to his so suing. He was cognizant of all the circumstances, at hand to take any needful steps, in frequent communication with the executors upon the subject, and the evidence shows that the alleged forgery was a reason assigned by the executors to Runals for not suing Lombard. There is,

84       Runals *v.* Harding *et al*       [Sept. T.

Opinion of the Court.

furthermore, in excuse, the evidence of Runals' assent to delay in proceeding against Lombard, the difficulty of pursuing a remedy against him, owing to his absence from the State, and unacquaintance with property which could be reached by suit at law.

In view of all the circumstances of the case, we can not come to the conclusion that there was such culpable negligence here on the part of these executors, in not prosecuting a suit against Lombard upon his agreement, that they have made the agreement their own, and are chargeable with the loss which may have resulted from a failure to bring and prosecute such a suit.

In our opinion, the court below was right in its finding that the plea was untrue.

It is unnecessary to notice the errors assigned as to the admission and exclusion of evidence, as, admitting the rulings to have been erroneous, and had the ruling been contrary, and the evidence accordingly rejected and received, it should not have varied the result.

It is objected to the decree rendered, that it is erroneous in granting an injunction and appointing a receiver, inasmuch as the bill contains no distinct charge of fraud, or that defendant has any particular property in his possession, or to be preserved for the benefit of judgment creditors; and the case of *First National Bank of Sioux City* v. *Gage*, 79 Ill. 207, is referred to as holding, in a case of a similarly framed bill, that it was insufficient, for the above reasons, to warrant the appointment of a receiver and the granting of an injunction.

It was so held in that case, in support of the ruling of the court below in sustaining a demurrer to a bill containing only like general allegations in respect of having property, as the bill in the present case; but it was also held that, as the bill was for discovery likewise, the demurrer should not have been sustained to that part of the bill, but it should have been retained for discovery. The defendant in the case now before us made no answer to the bill, and it was taken for confessed against him. The allegations of the bill that he has property,

choses in action, etc., stand confessed, and all the necessary discovery may be obtained upon the proceedings under the decree. *Dows* v. *McMichael*, 2 Paige, 345. Had discovery been made as prayed, there might have been a disclosure of particular property, rendering proper the appointment of a receiver and granting an injunction to preserve the property for creditors.

In the posture of this case, the defendant having declined to make discovery, and it standing admitted that defendant has property and choses in action in his possession, the same ought to be applied for the satisfaction of the debt here decreed to exist against him; and we see no sufficient objection to his being restrained from putting it out of his hands, and being required to surrender it into the possession of a receiver, to be appropriated for the payment of the sum found due by the decree. If the defendant has, in fact, no property, he can not be injured by the appointment of a receiver or granting an injunction. *Bloodgood* v. *Clark*, 4 Paige, 574.

The decree is affirmed.

*Decree affirmed.*