## John L. Moore y. Thomas D. Foster et al.

1. BILLS OF SALE—*When to be Considered as Mortgages.*—A bill of sale of a stock of goods to secure an indebtedness, where the title passes absolutely to the purchaser, with an understanding that if there is anything left after paying the indebtedness such balance is to be returned to the seller, is in legal effect a mortgage and nothing else.

2. SAME—*The Actual Transaction May Be Shown by Proof Aliunde.* —It is competent, no matter what are the terms of a bill of sale, to show by parol evidence that the actual transaction was in legal effect a mortgage of chattels.

3. PLEADING—*What a Plea of Set-off, Founded on the Loss of Collaterals, Ought to Allege.*—A plea of set-off, founded on the loss of collateral securities, ought to set out the facts from which the duties of the holder of such securities, as to the collection of them, arose, and wherein he failed to perform such duties so as to make him chargeable with the value of such collaterals supposed to have become valueless through his negligence.

Assumpsit, on promissory notes. Appeal from the Circuit Court of Jasper County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the February term, 1901. Reversed and remanded. Opinion filed September 4, 1901.

GEO W. FITHIAN and R. J. KASSERMAN, attorneys for appellant.

DAVIDSON & ISLEY, attorneys for appellees.

MR. JUSTICE BIGELOW delivered the opinion of the court.

On the 3d of August, 1898, appellees were indebted in the sum of $2,225 to appellant, who is a wholesale grocer in Indianapolis, Indiana. A few days prior thereto, appellant sent John Reagan, as his agent, to effect a settlement of this indebtedness. No conclusion was arrived at between the parties, and Reagan returned to Indianapolis without having accomplished anything.

One W. D. Miller was a traveling salesman for appellant and resided in Newton, Ill., where appellees also had their place of business, and on the day first mentioned, hearing that an attachment might possibly be brought by other creditors of the firm of T. D. Foster & Co., took from appellees a

bill of sale to appellant, as purchaser of the grocery stock belonging to appellees; this bill of sale was recorded, the key to appellee's store was delivered to Miller and by him returned to appellees. The stock inventoried $1,180.

At the same time, notes and accounts, good and bad, to the amount of $2,700, were turned over to Miller for appellant's benefit, by terms of absolute transfer. These notes and accounts were also returned to appellee Foster, who agreed to collect them and turn the proceeds over to appellant. Miller's authority was that of selling appellant's goods; he had no authority to effect settlements by taking property in payment of his principal's claims.

Two or three days after the execution of the bill of sale appellant sent Reagan to Newton, to act on his behalf, and appellees executed a judgment note to appellant for the sum of $2,225, bearing interest at the rate of seven per cent. With the approval of appellees the note was dated back, by Reagan, to August 3, 1898, and made payable one day after date. At the same time, appellee John Matheny assigned to appellant a bond for a deed to a piece of property in Newton, his equity in the land being estimated at $500 or $600. After these transactions had taken place the store was run in the name of W. D. Miller, agent. The money taken in, both from sales of groceries and from collections of the notes and accounts, was deposited in the People's Bank, to the credit of "W. D. Miller, store account."

Appellees T. D. Foster and Mack Miller continued about the business in the store until December 11, 1899, when, at the instance of W. D. Miller, the services of Mr. Foster were dispensed with; finally, appellant sold what remained of the stock to one Fuller, who purchased it in August, 1900. The evidence fails to show what amount of money he paid for it.

W. D. Miller looked after the business in a general way and had general control of the store. Collections were made by appellee Foster on the notes and accounts to the amount of $1,498. After the store had been transferred by

the bill of sale, and before December 11, 1899, Foster drew out of the business $765.97, appellee Miller drew out $515.87, and appellee Matheny drew out $76.20. There was credited on the $2,225 note the sum of $865, in various amounts, between August 3, 1898, and January 17, 1899.

All of the facts which have been stated are, in substance, conceded by both parties to be correct. Appellees claim, however, that the bill of sale and the transfer of the notes and accounts were in absolute payment of their indebtedness to appellant, and that they made the $2,225 note at the suggestion of Reagan, who wanted the note so that the indebtedness might draw interest at seven per cent, inasmuch as the amount of property transferred greatly exceeded the indebtedness, as there would be quite an amount of money coming back to appellees after the indebtedness had been satisfied; that Reagan said that he also wanted the note only as a sort of memorandum, on which credits could be made of money which would be paid from time to time. Appellees also claim that although Foster and Miller remained in the store after August 3, 1898, yet they did do so as servants and clerks of appellant, and each were to receive the sum of $1 per day for their services, so that their accounts with appellant were merely overdrawn.

On the contrary, appellant claims that although the bill of sale and the transfer of the notes and accounts were, by the terms thereof, absolute, yet the whole thing was merely intended as security for the repayment of the $2,225 debt; that W. D. Miller did not accept the bill of sale and the notes and accounts in any other way than as collateral security; or that if he did, he had no authority to accept property in payment of appellant's claim; that appellees executed the bill of sale primarily for their own benefit, so as to keep off other creditors, and that appellant's agent, Reagan, who alone had authority in the matter, fixed the true status of the transaction when he took the $2,225 note, to be, that appellees were running the store under the direction and supervision of appellant's agent, so as to keep down expenses, and to the end that all moneys coming in

from the business should, as far as practicable with the gradual winding up of the store, be applied on the indebtedness, and that the money retained by appellees while in the store was their own money, retained by the consent of all parties for their living expenses.

On the 15th of March, 1900, appellant had a judgment by confession entered on the balance due on the note, being the sum of $1,528.95. This judgment was entered up in vacation; appellees filed a motion and an affidavit in support of it, to set aside the judgment by confession; the motion was sustained and the judgment set aside. Thereupon appellees filed the general issue and a notice of special matters of defense. The cause was tried at the April term of court, 1900, and a verdict for the sum of $137.75 was returned against appellant.

A new trial was granted and the cause was again tried at the following October term, when the jury returned a verdict against appellant in the sum of $150; the court overruled a motion for a new trial and rendered judgment on the verdict.

The notice filed with the general issue is very lengthy and no useful purpose would be served by copying it into this opinion. Appellees contend that the notice is good, both as a plea of want of consideration for the note sued on and as a plea of set-off. Appellant contends that as a pleading the notice is valueless for either purpose.

In the view we take of the case, it will be unnecessary to pass on the sufficiency of the notice in either aspect; granting that it is good in law for either purpose, we are of opinion that the evidence fails to sustain either contention. Appellees were unquestionably indebted to appellant in the sum of $2,225, on August 3, 1898; but W. D. Miller had no authority to accept the bill of sale and the transfer of the notes and accounts in cancellation of this debt, and we do not think that he undertook to do so. Mr. Stewart, circuit clerk of Jasper county, who was the active means of getting the bill of sale executed, testified that he understood the title to the goods was going absolutely to appel-

lant, " with a string to it," and all of the appellees testify, that if there was anything left after the payment of the indebtedness to appellant, such balance should be returned to them.

The fact that the note was dated back so as to bear the same date that the bill of sale and the assignment of the notes and accounts bore, is a very strong circumstance that the indebtedness was still considered to be subsisting in connection with the bill of sale, notwithstanding the absolute terms of transfer contained therein. The testimony of Mr. Reagan, who had full authority to settle this matter, is that he never accepted the bill of sale and the assignment of the notes and accounts in cancellation of appellant's claim.

The fact which all of appellees insist upon is, that they were interested in the overplus after paying the note; their set-off is based on the contention that they had turned over more than $4,000 worth of property which appellant had failed to account for.

The fact that appellees were to pay interest on the $2,225 is the clear recognition by all parties to the transaction that the indebtedness was still subsisting.

No matter what form of words were used in the bill of sale and in the transfer of the notes and accounts, such an arrangement was a mortgage and nothing else. Jones on Chattel Mortgages, Sec. 1; 3 Pomeroy Eq. Jur., Secs. 1192-1196. It was competent, notwithstanding the terms of the bill of sale, to show by parol what the actual transaction was. The National Ins. Co. v. Webster, 83 Ill. 470. Appellant was a mortgagee in possession, responsible for ordinary care in the collection of the notes and accounts and in the disposition of the stock of groceries; and inasmuch as appellees themselves had full charge of such matters up to December 11, 1899, they must be content with the diligence and the care which was exercised up to that time. Whether the balance of the notes and accounts were returned by Mr. Foster to appellant, the evidence fails to show; if appellant is in possession of them his liability to account for their value will depend on many things not shown by this record.

Did he undertake to collect them? Are the notes and accounts good and collectible? If so, did he use ordinary care in enforcing their collection, assuming that he undertook to do so? See Rice v. Benedict, 19 Mich. 131; Burroughs v. Bangs, 34 Mich. 304; Runals v. Harding, 83 Ill. 75; Union National Bank v. Post, 64 App. 404.

A plea of set-off founded on the loss of collateral securities, if such is appellee's cause of action—and this is the only tenable theory of set-off we can see under the evidence —ought to set forth the facts from which appellant's duties arise, as to the collection of the collaterals and wherein appellant has failed to perform such duties, so as to make him chargeable with the value of the notes and accounts supposed to have become valueless by his negligence; otherwise appellant would not know what defaults he is chargeable with in dealing with collaterals which might be and probably were in all stages of collectibility when he received them.

The sale of the balance of the stock to Fuller, without notice to appellees, presents no question for review, because there is nothing in the record to show whether any injury resulted from the lack of such notice, admitting that notice was required by law.

The defense of want of consideration in the note we regard as entirely opposed to all the evidence, even of appellees themselves; and the theory of the defense of appellees' set-off is not borne out by the facts. That a set-off may be framed on the lines we have suggested, we do not doubt; and if sustained by proof, appellant will be accountable for such collaterals as he has lost by his lack of ordinary care in making the collections, if any.

A reversal of the judgment from any other supposed errors of law would leave the controlling question in this case untouched; we have therefore expressed our views in reference thereto at this time, so as to save useless litigation and expense which might be entailed had we waited until the case might be returned here on another appeal.

The judgment of the Circuit Court is reversed and the cause remanded.