STROBECK, REISS & Co., Plaintiff-Appellee, *v.* SOL NEHF, Individually and d/b/a MADISON-LA SALLE BUILDING, Defendant-Appellant.

(No. 57087;

. First District (5th Division)—September 21, 1973.

*Rehearing denied October 19, 1973.*

Haft, Shapiro & Haft, of Chicago, (Morris A. Haft, of counsel,) for appellant.

Altheimer, Gray, Naiburg & Strasburger, of Chicago, (Roger B. Harris, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Defendant appeals from an order granting plaintiff's motion for summary judgment and entering judgment for plaintiff in the sum of $7,820. On appeal defendant contends that the court erred in granting the motion.

Plaintiff's complaint alleged that it is engaged in the real estate brokerage business and that defendant operates an office building at 173 West Madison Street, Chicago; that in September 1968 plaintiff, through its agent, William Buchbinder, Jr., contacted defendant and advised him that a corporation (Keyboard Training, Inc.—hereafter Keyboard) sought office space in the Chicago area; that defendant thereupon agreed that if plaintiff would bring agents of the corporation to defendant's building and if a lease was signed, defendant would pay plaintiff a reasonable commission in an amount equal to that set forth in the schedule of the Chicago Real Estate Board; that agents of Keyboard were brought to defendant's building, introduced to defendant and lease negotiations ensued; that in October 1968 a lease (hereafter lease #1) was prepared by or on behalf of defendant and sent to Keyboard for its signature; that said lease was for 10 years but gave Keyboard an option to cancel after five years on payment of $39,780; that Keyboard signed said lease and sent it to defendant; that defendant refused to sign the lease but instead prepared and procured Keyboard's signature on another lease (hereafter lease #2) which was for five years with an option (Keyboard's) to renew it for an additional five years and upon failure to re-

new provided for payment of $39,000 to defendant; and that defendant has refused to pay plaintiff its commission which is $7,820.[1]

In defendant's amended answer he admitted that he had agreed to pay plaintiff a commission (to be agreed upon later) if a lease was entered into between Keyboard and himself; denied that said commission was to be in accord with the schedule of the Chicago Real Estate Board; denied that he had prepared lease #1 for Keyboard's signature; and further alleged that plaintiff had represented to defendant that Keyboard would sign a "straight" 10-year lease, i.e., one with no options to cancel; that plaintiff tried to coerce defendant into signing lease #1; that upon defendant's refusal to sign said lease, plaintiff told defendant that it would obtain office space for Keyboard in another building; that defendant then discharged plaintiff as his agent and employed another real estate broker who contacted Keyboard; and that thereafter defendant and Keyboard signed lease #2.

Both parties moved for summary judgment. The following affidavits and deposition testimony were before the court when it ruled on the motions:

Defendant submitted the affidavit of Thomas Bickett, an employee of Keyboard involved in the lease negotiations. Bickett stated that he told plaintiff's agent, William Buchbinder, that Keyboard wanted a five year lease, but that Buchbinder advised him that Keyboard could obtain only a 10-year lease due to the extensive alterations that would be required on any demised premises. Subsequently Buchbinder sent Bickett lease #1 (described earlier) for Keyboard's signature. A Keyboard officer signed it and sent it to defendant who refused to sign it. Defendant then informed Bickett that he desired either a 10-year lease without an option to cancel or a five year lease with an option to renew. Buchbinder then called Bickett and told Bickett that he was going to sue defendant and asked for Bickett's help. Bickett told Buchbinder that he couldn't be of help and that he felt Buchbinder was "not defending a right cause."

Defendant, Sol Nehf, submitted his own affidavit in which he stated that when Buchbinder first informed him of the prospective tenant, he told Buchbinder that he would pay a good brokerage commission. After Keyboard had inspected the premises, he told Buchbinder that he would

---

[1] The schedule of the Chicago Real Estate Board in effect at the time provided that the commission for commercial leases from six to 20 years was 2% of the rent for the entire term; options to cancel were to be disregarded in determining the length of the lease. On commercial leases of one to six years the commission was 7% of the first year's rental plus one-half of 1% of the annual rental for each additional six months.

give Keyboard a straight 10-year lease or a five year lease with an option to renew for an additional five years with a reimbursement clause if the option was not exercised. Defendant then received from Buchbinder a 10-year lease with an option to cancel after five years (lease #1). Defendant refused to sign the lease and Buchbinder demanded a commission based on a 10-year lease as set forth in the schedule of the Chicago Real Estate Board. Defendant would not pay a commission for a 10-year lease because the lease (lease #1) was in substance only for five years due to the option to cancel. The parties then met with defendant's attorney, Charles Brown, and defendant told Buchbinder that Keyboard wanted a five year lease with an option to renew, and that he would not sign lease #1. Buchbinder said that he would place Keyboard in another building, whereupon defendant said, "you [Buchbinder] no longer represent me." Defendant admitted that at his deposition (set forth *infra*) he stated that he had agreed to pay Buchbinder "a full commission." He now believed that the term "full commission" was not used but that the term used was "proper commission." Defendant has never paid brokerage fees based on the schedule of the Chicago Real Estate Board. After the noted meeting with Buchbinder and Brown, defendant contacted Donald Dee, another broker. Dee contacted Keyboard and sent them a five year lease with an option to renew for five years (lease #2). Defendant paid Dee a $700 commission.

Defendant submitted the affidavit of Charles Brown, his attorney, who described the meeting between himself, defendant and Buchbinder in the same manner as set forth in defendant's affidavit, supra.

Defendant also submitted the affidavit of Donald Dee, a real estate broker. Dee stated that he had lease #2, which was signed by Keyboard and defendant, drafted by Bernard Fried, an attorney.

Plaintiff submitted affidavits of three experienced real estate business men in the Chicago area. All of them stated that it was the custom and usage in their trade that the term "full commission," in connection with brokerage commissions due for producing a tenant in an office building, meant a full commission in accordance with the schedule recommended by the Chicago Real Estate Board.

Defendant stated at his deposition that he had wanted a straight 10-year lease or a straight five year lease; that in his earliest negotiation with Buchbinder he had stated that he would pay a "full commission" if a lease was subsequently signed by the prospective tenant; that he did not mean the term "full commission" to refer to the schedule used by the Chicago Real Estate Board; that he intended to pay a commission according to his past practices; that in his original negotiations there

had been talk of only a straight 10-year lease; that Buchbinder had lease #1 drafted; that defendant was willing to pay Buchbinder a five year commission on said lease; that defendant considered said lease to be a five year lease due to the option to cancel after five years; and that the crux of the meeting with Buchbinder at Charles Brown's office was to discuss the fact that defendant was not willing to pay a "10 year commission" based on lease #1.

At his deposition William Buchbinder stated that the parties first discussed either a five-year lease or a 10-year lease; that defendant promised that he would pay a "full commission"; that a 10-year lease (lease #1) was drafted by defendant and signed by Keyboard; that Buchbinder then received a call from Charles Brown, defendant's attorney, and a meeting was arranged to discuss the commission due plaintiff; that at the meeting Buchbinder told Brown that lease #1 was a 10-year lease, and that according to the schedule of the Chicago Real Estate Board a 10-year commission was due thereon; that Brown told him that defendant would not pay a 10-year commission on lease #1; and that Buchbinder told Brown that if defendant refused to sign lease #1, Keyboard would seek space in another office building.

Based on the foregoing the court denied defendant's motion for summary judgment, granted plaintiff's motion for summary judgment and entered judgment in favor of plaintiff for $7,820.

OPINION

██ Summary judgment is appropriately entered if:

"[T]he pleadings, depositions, and admissions on file, together with the affidavits, * * *, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment or decree as a matter of law. * * *" Ill. Rev. Stat. 1971, ch. 110, par. 57(3).

██ Initially defendant contends that as a matter of law plaintiff did not fulfill the terms of its contract with defendant and is not entitled to any commission at all, or, in the alternative, that a genuine issue of fact was raised as to this issue. He argues that the contract called for plaintiff to be compensated only if Keyboard executed a "straight" 5- or 10-year lease, i.e., one without any renewal or cancellation options at the end of five years. We disagree. The "crux" of this case, as defendant phrased it at his deposition, was not whether plaintiff was to receive any commission for procuring Keyboard as defendant's tenant but rather, the amount of that commission. This was also admitted by counsel for defendant during oral argument in this court. Defendant was simply unwilling to pay plaintiff a commission based on a 10-year lease (and

according to the rate of compensation set forth in the schedule of the Chicago Real Estate Board), as demanded by plaintiff. He felt that the lease submitted to him (lease #1) was in substance only for five years due to the option to cancel after five years therein. However, no genuine issue of fact has been raised as to whether or not plaintiff was entitled to some commission for its efforts. It clearly was.

This leads us to defendant's next contention, namely, that the court erred in concluding upon motion for summary judgment that plaintiff was entitled to a commission as set forth in the schedule of the Chicago Real Estate Board. The judgment awarded plaintiff, $7,820, was based on two premises: (1) that as a matter of law the parties had agreed that plaintiff was to receive a "full commission" for producing a tenant, and (2) that the affidavits submitted to the court unequivocally show that it is the custom and usage in the real estate business that the term "full commission" means full commission as set forth in the schedule of the Chicago Real Estate Board.

In *Ruby v. Wayman*, 99 Ill.App.2d 146, 150, 240 N.E.2d 699, in passing on a motion for summary judgment, the court said:

> "[T]he court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent."

In defendant's answer to the complaint he denied that the parties had agreed that remuneration would be based upon the schedule of the Real Estate Board. At his deposition he stated that the term "full commission" had been used during early negotiations with plaintiff but that to him this term meant the rate of commission he had paid other brokers in past real estate dealings and was not based on any recommendation of the Chicago Real Estate Board. In his affidavit he stated that the term "full commission" had never been used but that the term "proper commission" or "good commission" had been mentioned. Based on the foregoing, it is evident that there was a genuine issue of fact raised as to whether the term "full commission" was part of the remuneration provision of the contract.[2]

■■ We, of course, do not decide that the court's damage award might

---

[2] Another issue of fact which arises due to our ruling concerns a letter which plaintiff alleges to have sent defendant during their early negotiations stating that it was plaintiff's understanding that it was to receive a full commission in accordance with the recommended rates of the Chicago Real Estate Board in the event a lease was consummated. Defendant denied receiving the letter. Buchbinder testified that defendant acknowledged receipt thereof. Plaintiff did not rely on the letter in its motion for summary judgment.

not ultimately prove correct but only that it is a question of fact to be determined after a trial on the issue.

The judgment is reversed and the cause remanded for a trial on the issue of damages only.

Reversed and remanded with directions.

LORENZ and SULLIVAN, JJ., concur.

