STELLA WINDLOW, Adm'r of the Estate of CONSTANCE SZYMCZYK, Deceased, Plaintiff-Appellee, *v.* CARL FREDERICK WAGNER, Defendant-Appellant.

(No. 73-327; ▮▮▮▮▮▮▮▮▮▮

Second District (1st Division)—April 24, 1975.

*Rehearing denied July 10, 1975.*

Wayland B. Cedarquist, of Boodell, Sears, Sugrue, Giambalvo & Crowley, of Chicago, for appellant.

Emmett J. Galvin, of Flynn, Galvin & Ryan, of Chicago, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Constance Szymczyk died on August 31, 1965. During the last 5 years of her life, she had maintained a business relationship with the defendant, Carl Wagner, a real estate broker, who, pursuant to an agreement between them, acted as her agent by investing her capital in the purchase of various parcels of real estate, construction of residences upon them, and selling of the properties. Plaintiff, Stella Windlow, was appointed administratrix of Ms. Szymczyk's estate and, in October of 1965, instituted suit in equity against Carl Wagner (and others not involved here) seeking an accounting and to recover certain monies which, she alleged, were previously due Ms. Szymczyk, and now to her estate, under the terms of their agreement. In 1967, a second and a third amended complaint were filed and a 2-day trial was had on March 24-25, 1969, during which testimony was taken, many exhibits were filed, briefs were submitted and arguments made.

On October 3, 1969, a decree was entered, final in many respects, which ordered the defendant to render a full accounting. He employed an accountant and hearings were had. In February of 1972, the plaintiff filed an amended motion for summary judgment, the defendant answered and the plaintiff replied, further hearings were had and on May 30, 1973, a so-called "Partial Summary Judgment" was entered consisting of two parts.

One portion (b) entered judgment for $25,541.98, plus interest since 1965, for a total of $35,332.97 and costs. We shall, for clarity, call this the "accounting" judgment.

The other portion (a) entered judgment for another $20,000, plus interest, for a total of $27,375 and costs. This was based on three promissory notes and we shall, for clarity, call this the "note" judgment.

The court expressly found that no just cause existed for delay of the enforcement or appeal and the defendant has appealed to this court.

With respect to the $35,332.97 "accounting" judgment, the defendant here contends that summary judgment was inappropriate because there existed genuine issues of material fact (1) as to the proper construction and interpretation of the May 2, 1960, letter agreement; and (2) as to the effect of the negotiation of the defendant's check, dated July 30, 1965.

We disagree and affirm this portion of the judgment.

With respect to the $27,375 "note" judgment, the defendant here contends that summary judgment was inappropriate because there existed genuine issues of material fact (1) as to the defendant's personal liability on the three notes involved; and (2) as to whether the administratrix plaintiff had standing to sue on the two notes payable to her granddaughters. We disagree on (1), agree on (2) and therefore reverse so much of said judgment as is based on these two notes and remand this segment of the cause for further proceedings.

The basic facts are not particularly complicated. By way of background, it appears from the record that both defendant and Ms. Szymczyk were members of a religious group known as the "I Am" Temple. There they learned that they had complementary interests; that is, Ms. Szymczyk had capital she wished to invest and defendant, a real estate broker, d/b/a Light Builders, wished to invest it for her. They arrived at a meeting of the minds, apparently sometime in early 1960, and the following portions of a letter signed by them and dated May 2, 1960, set out the terms of their agreement.

"Blessed One:

Confirming our verbal agreement you are to deposit $32,000. Into the account of Light Builders for the purpose of giving me the authority to purchase lots and construct homes on them, the net profits on which shall be divided equally between us. An allowance of 10% of all construction costs will be paid to me to cover overhead, management of construction, advertising, and general supervision. Also 6% is to be allowed for selling the properties whether it is paid to Brokers or myself. If I work on any of the jobs physically I shall be paid the same rate as any other workmen.

The Lots purchased for cash shall immediately be conveyed into a Land Trust which you will control to give you 100% Security for your investment. You will authorize me to sign checks as Trustee for the paying of bills, purchase of lots, and for the general conducting of the Business. A monthly statement will be rendered to you showing all expenditures, receipts, etc.

In the event it is necessary to make construction loans, the financing charges, interest, title fees, etc., will be considered as construction expense. Wherever possible we will buy the lots with as little cash outlay as necessary in order to conserve our cash for construction. Wherever it is advantageous we will sell the properties on contract retaining Title, or on a lease-purchase arrangement. We might also consider taking back Second Mortgages."

Ms. Szymczyk then established a land trust at the First National Bank

of Lake Forest on March 20, 1961. It was a standard land trust agreement which named her as beneficiary but, pursuant to her agreement with the defendant, granted him power of direction over the trustee. Later that year, in November, she amended the trust to provide that, while she was to continue as beneficiary during her lifetime, upon her death, the "I Am Reading Room of Chicago, Inc.," or, in case of its dissolution, the Saint Germain Foundation, would succeed her as beneficiary.

Ms. Szymczyk initially furnished a total of $43,556 to the defendant. She also furnished an additional $20,000, in return for which he delivered to her with three promissory notes, signed "agent for the Beneficiary of Trust # 1812 Carl F. Wagner." Two of the notes were for $5,000 each and were made payable, one each to Nada Windlow and Colen Cody, her two granddaughters. The third was for $10,000 and made payable to Ms. Szymczyk or the Saint Germain Foundation. Defendant paid interest on the three notes during Ms. Szymczyk's lifetime and for 2 years thereafter but no principal.

Defendant invested the capital in real estate, both vacant and improved, taking title in the name of the trust. He obtained additional capital for further investments on behalf of the trust by mortgages and construction loans secured by the beneficial interest of the trust. Most of the residences were sold, either for a lump sum or on installment agreements. Some of them were leased with options to purchase. All receipts were paid to defendant as agent for the trust, and all payments on behalf of the trust were made by him as agent.

Defendant's system of accounting was a bit bizarre. He kept all the cash in a drawer in his office, which he presumably locked, and when he had to make a payment, he simply withdrew the appropriate amount of cash from the drawer and with it purchased a cashier's check or money order. Using this method, he remitted a total of $17,806.64 to Ms. Szymczyk during the 5 years. The final check, dated July 30, 1965, was for $1500 and, on the back, in defendant's handwriting, were the words "Income and Profit to date." The check was endorsed by plaintiff for Ms. Szymczyk and cleared the defendant's bank account on August 31, 1965, the day of her death. At no time did he submit a statement to her. At no time did he even prepare a statement. In fact, he kept no accounting whatsoever; not even a checking account into which business receipts could have been deposited and out of which disbursements could have been made. He apparently comingled the assets of his other business, Light Builders, with the assets provided by Ms. Szymczyk: both apparently lived in the confines of the same drawer.

Following Ms. Szymczyk's demise, the plaintiff-administratrix began to determine and assemble the assets of her deceased mother's estate. This

led to institution of the suit below. Her third amended complaint was brought against several defendants. Count I involved only Carl Wagner and was in equity for an accounting. The other counts were against other defendants, were severed, have been resolved, and are not a part of this appeal.

A trial was held on Count I of the plaintiff's third amended complaint on March 24-25, 1969. At that time testimony was taken, the defendant introduced some 52 exhibits, briefs were submitted and arguments made. On October 3, 1969, a decree, final in most respects, was entered finding the facts for the plaintiff and ordering the defendant to render a full accounting.

Although the defendant employed an accountant and submitted what purported to be accounts, they were not satisfactory and things dragged on for years. In February of 1972, the plaintiff filed an amended motion for summary judgment, the defendant answered, the plaintiff replied, further hearings were held and on May 30, 1973, the so-called "Partial Summary Judgment," in two segments, here challenged, was entered.

Passing now to the defendant's contentions regarding the $35,332.97 "accounting" judgment, he first contends, in substance, that "partial summary judgment" was inappropriate because there existed a genuine issue of material fact as to the proper construction and interpretation of the May 20, 1960, letter agreement.

While the judgment itself and the briefs call it a "partial summary judgment," it differs greatly from the ones we usually encounter here— viz: an abrupt ending of a lawsuit hardly commenced, on brief affidavits. Here the case had already dragged on for 7½ years and a full scale trial had been had in 1969 which resulted in a decree, final in many respects, but which has, even yet, resulted in no pecuniary recovery for the plaintiff.

■■ Even were the judgments here challenged "summary" in the usual sense, "summary judgment" is proper whenever

> "* * * the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. * * *" (Ill. Rev. Stat. 1973, ch. 110, par. 57(3); see also *Strobeck, Reiss & Co. v. Nehf* (1973), 14 Ill.App.3d 529, 302 N.E.2d 743.)

Here, as we shall see, there were no genuine issues of material fact.

Defendant first maintains that the portion of the letter agreement which entitled him to 50% of the "net profits" and 10% of the "construction costs" is ambiguous and that the court erred when it accepted plaintiff's version and found that "net profits" excluded rental income and interest paid on installment sales contracts and determined that the purchase

price of land for the trust and real estate taxes and such paid on that land were excluded from "construction costs." Defendant contends that these items should have been included as "net profits" and "construction costs" according to the plain meaning of the agreement and intention of the parties.

Defendant's opposition to plaintiff's motion for summary judgment contained only his own counteraffidavit which contained only personal allegations that, based upon an alleged oral understanding between him and the decedent, "net profits" and "construction costs" included these additional items. There are several problems with this counteraffidavit. First, as pointed out by plaintiff in her response to defendant's reply to her motion for summary judgment, defendant would be incompetent to testify at trial respecting its contents since he would be barred as a witness by the dead man statute (Ill. Rev. Stat. 1973, ch. 51, par. 2.). Thus, the affidavit violated Supreme Court Rule 191 (Ill. Rev. Stat. 1973, ch. 110A, par. 191(a)), which states that an affidavit in opposition to a motion for summary judgment "* * * shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto * * *." This means that the counteraffidavit must recite facts to which affiant could testify if called at trial (*Gliwa v. Washington Polish Loan and Building Association* (1941), 310 Ill.App. 465, 34 N.E.2d 736; *In re Estate of Boysen* (1966), 73 Ill.App.2d 197, 218 N.E.2d 838). Thus, defendant's affidavit in the instant case, concerning interpretation of the agreement, was not entitled to consideration since he could not have so testified at trial. Had defendant wished to raise a question of fact regarding the plaintiff's version of the agreement, he could have produced affidavits of others, not in interest, respecting customary business practices. He did not do so. Thus, his reply to plaintiff's motion for summary judgment, containing his counteraffidavit, was merely conclusory, without any admissible supportive facts respecting his interpretation of the agreement. In short, defendant had no evidence to offer at trial. A mere statement by a party that a genuine material issue of fact exists does not create such an issue thereby precluding summary judgment (*Giampa v. Sunbeam Corp.* (1966), 68 Ill.App.2d 425, 216 N.E.2d 233; *Anderson "Safeway" Guard Rail Corp. v. Champaign Asphalt Co.* (1971), 131 Ill.App.2d 924, 266 N.E.2d 414). We conclude that the construction and interpretation of the letter agreement were matters to be decided by the court and that it did not err when it excluded from "net profits" the rental income and the interest paid on installment contracts and when it excluded from "construction costs" the purchase of land for the trust and real estate taxes paid on that land. These items resulted in the $35,332.97 judgment.

The defendant also contends that there was a genuine issue of material

fact as to whether the plaintiff had agreed, on behalf of Ms. Szymczyk, to modify the agreement so as not to require further payments or accounting by defendant. Defendant maintains that Ms. Szymczyk's name (actually signed by the present plaintiff) appearing on defendant's last check to Ms. Szymczyk for $1500 under defendant's words, "Income and Profit to Date," operated as an acceptance of a modification of the original agreement thereby releasing defendant from his obligation to account to Ms. Szymczyk or to her estate. Defendant is clearly wrong.

In the first place, this issue had long since been finally adjudicated and it was too late, by some 5½ years, to appeal on this issue.

During the March 19, 1969, trial, the defendant contended among other things, that:

> "* * * check No. 61905 of July 30, 1965, with the endorsement 'in full of profits and interest to date from Light Builders' constituted a full discharge and release of Wagner."

The trial court, in its memorandum opinion, concluded that:

> "The Court could not possibly agree that by the endorsement the Deceased principle intended to release the defendant from his duties as agent, particularly his obligation to render an account,"

and the decree of October 3, 1969, which was final in most aspects ("no just cause to delay," etc.), expressly found, before ordering him fully to account,

> "9. That the decedent * * * did not release the defendant CARL FREDERICK WAGNER, from his duties as her agent or from his obligation to render an accounting."

In the second place, even were the contention still available to the defendant, the contention is utterly without merit in that no factual basis for such a result is alleged.

In actuality, even though defendant lacks the audacity expressly so to contend, the defendant is arguing "accord and satisfaction"—but nowhere does he set out facts establishing (1) that, before and at the time that said check was tendered, there existed between the maker and the payee a bona fide dispute as to the amount due; or (2) that the check was expressly tendered and accepted and negotiated on the full understanding on the part of the payee that said check was being accepted as a final and binding settlement "accord and satisfaction" of that dispute.

■■ One of the most succinct statements of the requirements of accord and satisfaction is found in *Koretz v. All American Life & Casualty Co.* (2d Dist. 1968), 102 Ill.App.2d 197, 243 N.E.2d 586, where Mr. Justice Moran, at page 201, stated:

> "In order to constitute an accord and satisfaction there must exist a bona fide dispute, *Fichter v. Milk Wagon Drivers' Union*,

Local 753, 382 Ill. 91, 99, 46 N.E.2d 921 (1943), cert. den 319 U.S. 758, 87 L.Ed. 1710, 63 S.Ct. 1177; the sum in dispute must be unliquidated, A. & H. Lithoprint v. Bernard Dunn Advertising, 82 Ill.App.2d 409, 412, 226 N.E.2d 483 (1967); consideration must be present; however, payment by the debtor of a lesser sum as a compromise of a disputed claim may be deemed proper consideration, Smyth v. Kaspar American State Bank, 9 Ill.2d 27, 42, 136 N.E.2d 796 (1956); A. & H. Lithoprint v. Bernard Dunn Advertising, supra, page 412; a meeting of the minds with intent to compromise is essential but may be gleaned from the words and acts of the parties, Brubaker v. United States, 342 F.2d 655, 661 (7th Cir. 1965); and, the accord must be executed, In re Estate of Cunningham, 311 Ill. 311, 316, 142 N.E. 740 (1924); Corydon & Ohlrich, Inc. v. Kusper Bros Co., 345 Ill.App. 224, 233, 102 N.E.2d 672 (1951)."

To the same effect, see *Lotta v. Noble* (2d Dist. 1960), 25 Ill.App.2d 192, 166 N.E.2d 107; and *Beeding v. Burns* (2d Dist. 1967), 79 Ill.App.2d 117, 223 N.E.2d 226.

In the case at bar, none of these elements was alleged and the court therefore had no factual dispute before it. There just was no "accord and satisfaction."

We therefore disagree with all of the defendant's contentions with respect to the $35,332.97 "accounting" judgment and affirm it in its entirety.

This brings us to the defendant's contentions regarding the $27,375 "note" judgment. He first contends that "partial summary judgment" was inappropriate because there existed a genuine issue of material fact as to whether he was personally liable on the three notes involved. We conclude that there was not and that the court properly held him personally liable on them.

■■ All three notes were signed "agent for the Beneficiary Trust # 1812 CARL F. WAGNER." Obviously, the words "Agent for the beneficiary of Trust # 1812" are not only ambiguous, they are nonsense, but they were written by the defendant and, because of the dead man statute, he was not a competent person to explain them.

■■ The trial court therefore disregarded them and went on to other factors bearing on what the signature meant. Although the defendant contends that the $20,000 went into the venture as additional capital, he is not a competent witness to say so. Nor would such a claim make sense in the light of his conduct of the business. He did not, for example, give her notes or even receipts for her earlier capital outlays ($43,556). Furthermore, he paid interest on each of these notes from early 1965 until

March of 1967. In our opinion, nothing more could be produced at further hearings and we agree with the trial court that the defendant is personally liable on the three notes, insofar as the signatures are concerned.

The defendant, as to the two $5,000 notes, payable, one to Nada Windlow and one to Colen Cody (her granddaughters), also contends that "partial summary judgment" was inappropriate because there existed a genuine issue of material fact as to whether the plaintiff administratrix had standing to sue on those notes. We conclude that the defendant's contention has merit and therefore reverse so much of the $27,475 "note" judgment as is based on those two notes and remand that portion of the cause for further proceedings.

The third amended complaint, in paragraph 6, alleged that these two $5,000 notes

> "were at the specific instance and direction of the said Constance Szymczyk made payable, respectively, to her said grand daughters Colen Cody * * * and Nada Windlow * * * intending thereby to make a gift of the proceeds thereof to her said grand daughters; that said payees are now the owners and holders of said notes".

Although plaintiff's brief here states that "the two $5,000 notes were among her effects when she died," no record citation is given and we have found no basis for such statement in the record. Nor does the statement of the plaintiff's attorney, on oral argument before us, to the effect that he had the two notes in his briefcase, clear up the matter. It can only be resolved by a remand of this issue to the trial court for further proceedings.

We therefore affirm the $35,332.97 "accounting" judgment in its entirety; affirm so much of of the $27,375 "note" judgment as is based on the $10,000 note ($13,687.50); reverse so much of the $27,375 "note" judgment as is based on the two $5,000 notes; and remand that portion of the cause for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded with directions.

SEIDENFELD, P. J., and GUILD, J., concur.