(No. 63456.— )

*In re* MORTON ALLAN SEGALL, Attorney,
Respondent.

*Opinion filed April 16, 1987.—Rehearing
denied June 5, 1987.*

CLARK, C.J., and SIMON, J., dissenting.

Daniel Drake, Senior Counsel, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Robert B. Oxtoby, of Springfield, for respondent.

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a three-count complaint

charging respondent, Morton Allan Segall, with professional misconduct. Count I of the complaint charged that respondent's attempts to settle a lawsuit brought against him by the Carte Blanche Corporation violated Rules 1—102(a)(4), 1—102(a)(5) and 7—104(a)(1) of the Code of Professional Responsibility (87 Ill. 2d Rules 1—102(a)(4), 1—102(a)(5), 7—104(a)(1)). Count II charged the same violations with regard to respondent's attempts to settle a lawsuit brought against him by the Amoco Oil Company. Count III charged that respondent's repeated refusal to allow Amoco to take his deposition violated Rule 1—102(a)(5) (87 Ill. 2d R. 1—102(a)(5)). The Hearing Board found no ethical violation with regard to count III, but found against respondent on counts I and II. The Hearing Board recommended that he be censured. The Review Board agreed with the Hearing Board's findings but recommended that a two-year suspension be imposed. Respondent filed exceptions in this court pursuant to Rule 753(e)(5) (103 Ill. 2d R. 753(e)(5)).

The issue before this court is what, if any, sanctions should be imposed.

. The complaint in the Carte Blanche suit alleged that respondent incurred numerous credit card charges, beginning on May 18, 1979. As of the date of the complaint, November 24, 1981, the unpaid balance on the account was alleged to be $12,837.42. On February 8, 1982, a default judgment was entered in favor of Carte Blanche for $12,837.42, plus costs.

Respondent moved to vacate the default judgment, claiming lack of notice. On October 4, 1982, while this motion was pending, respondent, who was in Florida at the time, directed his secretary to send a check for $95.60 directly to Carte Blanche. He knew at the time that Carte Blanche was represented by counsel, but he nonetheless bypassed that counsel. Typed on the reverse of the check was an attempted limitation, stating that

4

"acceptance, negotiation or endorsement of this draft shall constitute a full and final release in settlement of all claims and causes of action for Acct. No. 944—148—645—4 in the name of Mort A. Segall." Allegedly accompanying the check was a letter which referenced the pending lawsuit, and read as follows:

"Gentlemen:

In order to settle all pending claims and disputes in connection with the above entitled litigation for the above account, and to avoid the expense and effort of further litigation, I am enclosing herewith and tendering my check in the sum of $95.60 in full settlement and payment of any and all claims, causes of action and matters in dispute as referenced above and now pending so that all claims between your company and the undersigned can be resolved amicably and finally.

If you agree with this offer of settlement to resolve all pending disputes and all claims with reference to the above, then your acceptance, negotiation or endorsement of the enclosed check shall constitute a full and final release, settlement and satisfaction of all claims and disputed actions with reference to all pending disputes, claims and accounts as referenced above, and you need not acknowledge this letter as the cancelled check will be sufficient for my records to show that you have agreed to accept the enclosed payment in full satisfaction and settlement and release of all pending matters and claims and accounts disputed as referenced above."

On November 22, 1982, respondent's first motion to vacate the judgment was denied. On December 10, 1982, respondent filed another motion to vacate the judgment. Attached to the motion were copies of the above letter and the negotiated check. In support of the motion respondent claimed that the negotiated check evidenced a settlement of Carte Blanche's claims. The trial court, however, found that there had been no accord and satisfaction, and dismissed the motion.

Respondent appealed, but the appellate court affirmed the trial court's judgment in an unpublished order (*Carte Blanche Corp. v. Segall* (1983), 115 Ill. App. 3d 1158). (A copy of this order is attached to this opinion as an appendix.) On May 24, 1984, more than 10 months after the appellate court order was issued, respondent paid the judgment in full.

The facts in the Amoco case were very similar. Amoco's amended complaint alleged that respondent, as of August 26, 1980, owed a balance of $11,238.16 for credit purchases between January 1, 1979, and June 1, 1980. On October 4, 1982, the same date as his letter and check to Carte Blanche, respondent directed his secretary to send Amoco a letter and a check for $48.76. Except for the account number and the lawsuit referenced, the letter and the endorsement restriction on the check were identical to those in the Carte Blanche case. As in the Carte Blanche case, respondent knowingly bypassed Amoco's lawyers, sending the check directly to Amoco.

On November 10, 1982, respondent filed a motion to dismiss Amoco's suit, claiming that the negotiated check evidenced a settlement. Respondent also filed a motion to "quash" his own deposition, for which he had failed to appear despite two court orders specifically requiring him to do so. On December 16, 1982, respondent's motions were denied, and a judgment for $11,238.16, plus costs, was entered against him as a sanction for his repeated refusal to be deposed. This judgment was upheld by the appellate court. (For further details, see *Amoco Oil Co. v. Segall* (1983), 118 Ill. App. 3d 1002.) Approximately three months later respondent paid the judgment in full.

Disciplinary Rule 7—104 states, in part:

"(a) During the course of his representation of a client a lawyer shall not

(1) communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so." (87 Ill. 2d R. 7—104(a)(1).)

Respondent admits that in each of the lawsuits he knowingly contacted a party represented by counsel without obtaining counsel's consent. He argues, however, that these contacts were made on his own behalf as a litigant and thus were not "[d]uring the course of his representation of a client." We disagree. An attorney who is himself a party to the litigation represents himself when he contacts an opposing party. Rule 7—104(a)(1) is designed to protect litigants represented by counsel from direct contacts by opposing counsel. A party, having employed counsel to act as an intermediary between himself and opposing counsel, does not lose the protection of the rule merely because opposing counsel is also a party to the litigation. Consequently, an attorney who is himself a litigant may be disciplined under Rule 7—104(a)(1) when, as in the case at bar, he directly contacts an opposing party without permission from that party's counsel.

The Administrator also alleges that respondent's conduct violated Disciplinary Rules 1—102(a)(4) and (5). Rule 1—102 reads in pertinent part:

"(a) A lawyer shall not

* * *

(4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; or
(5) engage in conduct that is prejudicial to the administration of justice." 87 Ill. 2d R. 1—102.

The Administrator argues that respondent's conduct was deceptive and was an attempt to defraud Carte Blanche and Amoco, in violation of Rule 1—102(a)(4). The Administrator also argues that, by representing to

the court in each case that the suit had been settled, respondent attempted a fraud on the court, in violation of Rule 1—102(a)(5).

In both circuit court cases the court found that the plaintiff's negotiation of respondent's check did not establish an accord and satisfaction because respondent did not sufficiently prove that the letter explaining the conditional settlement was actually sent along with the checks. In the Amoco case, for example, the appellate court pointed out that respondent claimed that his secretary, Barbara Butts, sent the letter at his direction while he was in Florida. However, Butts neither testified nor supplied an affidavit, so there was no evidence as to when and where the letter was sent, or if it was sent at all. (*Amoco Oil Co. v. Segall* (1983), 118 Ill. App. 3d 1002, 1012.) If the Administrator had been able to prove that respondent knew that the letters had never been sent, then it would have been obvious that respondent had committed fraud. The Administrator, however, specifically alleged that respondent *did* send the letters to Amoco and Carte Blanche. Since this allegation was admitted by respondent we must assume that the letters were in fact sent. The Administrator nonetheless argues that the letters, together with the circumstances under which they were sent, amounted to an attempted fraud.

This court has applied a broad definition of fraud, finding fraud whenever there is conduct "calculated to deceive." (*In re Armentrout* (1983), 99 Ill. 2d 242, 251; accord, *People ex rel. Chicago Bar Association v. Gilmore* (1931), 345 Ill. 28, 46.) We agree with the Hearing Board and the Review Board that respondent's conduct, taken as a whole, was calculated to deceive Carte Blanche and Amoco by obtaining settlements of large claims for *de minimis* amounts. Respondent bypassed each plaintiff's attorney in these cases and sent each plaintiff a letter which was designed to make the plaintiffs'

agents believe that the minimal amount tendered was the amount actually due. The letters did not state the actual amount due, and, in the Carte Blanche case, did not even mention that the dispute had been reduced to a judgment. We agree with the Review Board that there is "no rational basis upon which we can believe that Respondent thought that he could actually settle claims of $12,837.42 and $11,238.16 for $95.60 and $48.76, respectively." We therefore agree that his conduct violated Rule 1—102(a)(4).

Also, by filing motions to dismiss the suits due to the purported settlements, respondent attempted to involve the courts in his fraudulent scheme. Involving the courts in such a scheme must be considered "prejudicial to the administration of justice," and thus respondent's conduct also violated Rule 1—102(a)(5).

While respondent's attempted fraud was not successful, an attempted deception is as serious an ethical violation as a successful one. Together with the violation of Rule 7—104(a)(1) we feel that respondent's attempted fraud was serious enough to warrant a substantial suspension. We therefore order that respondent be suspended from the practice of law for a period of two years from the date of this opinion.

*Respondent suspended.*

CHIEF JUSTICE CLARK, dissenting:

I cannot agree with the majority that the respondent should be suspended from the practice of law for a period of two years, and therefore I respectfully dissent.

While the Review Board recommended a two-year suspension here, the Hearing Board recommended censure, and I believe that censure would be the more appropriate sanction in this case for the following reasons. First, and foremost, it should be noted that the respondent has in no way harmed any clients he represents,

which is commonly the most egregious area of lawyer misconduct. Next, the judgments that are the subject of the alleged misconduct have been paid in full, plus costs and interest. Further, although I do not condone respondent's bypassing the lawyers representing Carte Blanche and Amoco, I believe the respondent's argument that he contacted these parties on his own behalf and not during the course of his representation of a client should be considered in mitigation. In response to the respondent's argument, the majority simply states, without citation to authority, that "[a]n attorney who is himself a party to the litigation represents himself when he contacts an opposing party." 117 Ill. 2d at 6.

There was evidence presented that respondent's wife was suffering from terminal cancer of the spine and that the respondent was in Florida with his wife at the time he directed his secretary in Champaign to send the checks and letters. Respondent testified that he was sick of what was going on, that he did not intend to defraud Carte Blanche or Amoco but that he had "had it" and wanted to "get the case settled and disposed of." In his brief, respondent alleges that "[a]s far as [he] was concerned, he sent to Amoco and Carte Blanche the amounts he thought he owed." In both cases, default judgments were entered against the respondent and the respondent has alleged a lack of notice.

Although I believe that respondent's attempts to settle these claims for such small sums could be interpreted as a lack of good faith, I would not go so far as to call them "fraudulent." "Fraud" is defined as "[a]n intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right; a false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been dis-

closed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury." (Black's Law Dictionary 788 (rev. 4th ed. 1968).) I believe the respondent's letters which accompanied his checks were straightforward. Respondent did not intentionally pervert the truth. His intentions were clear from the plain language he used in his letters. Both companies were free to reject the "offer of settlement" made by the respondent. Instead of doing so, however, each of the companies cashed the respondent's checks despite the language typed on the reverse sides of the checks stating: "acceptance, negotiation or endorsement of this draft shall constitute a full and final release in settlement of all claims and causes of action for Acct. No. 944—148—645—4 in the name of Mort A. Segall."

In all cases involving alleged misconduct, we have sought uniformity in the sanctions imposed. Two years' suspension in this case is far too severe in contrast to other cases, particularly in light of the fact that respondent has had a previously unblemished record and has been cooperative in these disciplinary proceedings.

In the case of *In re Sherman* (1975), 60 Ill. 2d 590, the respondent therein was alleged to have commingled and converted his client's funds. The Hearing Board found that respondent had "technically" commingled and converted his client's funds and had misled the Committee on Inquiry of the Chicago Bar Association during the investigation of the complaint against him. The Hearing Board recommended censure. The Review Board found that he had "actually" commingled and converted his client's funds and recommended a one-year suspension. This court censured the respondent. I believe the respondent's conduct in the instant case is less serious than the respondent's conduct in *In re Sherman.*

In the case of *In re Clayter* (1980), 78 Ill. 2d 276, again, the respondent therein commingled and converted

earnest money that had been entrusted to him by his clients. The Hearing Board recommended a three-month suspension. The Review Board affirmed the recommendation of the Hearing Board, and this court held that censure was the more appropriate sanction. This court found that the facts of *In re Clayter* were similar to those in *In re Sherman* and therefore stated that "[a]lthough we recognize that each disciplinary case is unique, where facts are strikingly similar to those in another case, a degree of uniformity in the discipline imposed should be sought." *In re Clayter* (1980), 78 Ill. 2d 276, 283.

The lawyer misconduct in the two cases cited above could have resulted in actual harm to clients. These cases are just two examples, but there are many cases where the respondent's conduct has been more offensive than that complained of herein and where the sanction imposed by this court has been less severe. Therefore I respectfully dissent.

JUSTICE SIMON joins in this dissent.

## APPENDIX TO OPINION

CARTE BLANCHE CORPORATION, Plaintiff-Appellee, v. MORT A. SEGALL, Defendant-Appellant.

Fourth District No. 4—82—0840

PRESIDING JUSTICE WEBBER delivered the order of the court:

Defendant appeals orders of the circuit court of Champaign County which on two occasions denied his motions to vacate a default judgment.

If ever there were an appeal so frivolous as to merit a one-line order affirming, this is it. However, it is the duty and obligation of courts, both trial and reviewing, to be more considerate and more tolerant than the litigants before them, even when those litigants are members of the

practicing bar from whom greater deference might be expected. We therefore elect to consider the merits.

Plaintiff filed suit in the circuit court of Champaign County against the defendant, a practicing attorney, for $12,837.42, representing accumulated charges on defendant's credit card which had been issued to him by plaintiff. Suit was filed November 24, 1981, and personal service obtained on defendant on November 30, 1981. On December 30, 1981, defendant, through his counsel, Summers, filed a motion for extension of time in which to plead. Plaintiff's attorney obtained a setting for this motion on January 22, 1982, that date being January 27 at 9 a.m. Proof of notice by mailing to defendant's counsel appears in the record.

On January 27 plaintiff's counsel appeared but neither defendant nor his counsel did. The trial court allowed the motion, fixing February 5, 1982, as the date for defendant to answer or otherwise plead to the complaint or face default. Proof of the ruling by mailing to defendant's counsel appears in the record. No answer or other pleading was filed by defendant, and on February 8, 1982, defendant was defaulted and judgment against him in favor of the plaintiff was entered in the sum demanded by the complaint.

On February 23, 1982, attorney Summers filed a verified motion to vacate the default and judgment, and attached thereto were an answer and counterclaim. The motion is ambiguous in that it states that "[d]efendant notified of the hearing on his [sic] motion" and that "[d]efendant nor his attorney received any notices of any orders entered on January 27, nor did Defendant or his attorney receive any notice of the hearing on February 8, 1982, on the motion for a default and judgment."

On March 12 plaintiff filed a motion to strike the answer and counterclaim and objection to the motion to vacate. Up to this time the case had been handled by Judge Nicol. At a date not clear in the record (a proof of notice is dated April 14, 1982, and file marked by the clerk on May 4, 1982), defendant obtained a setting on the motion to vacate before Judge Tucker for May 4. On that date, Judge Tucker returned the case to Judge Nicol.

On August 12, 1982, plaintiff filed a motion to deny defendant's motion to vacate. In it plaintiff alleged that Judge Tucker refused to hear defendant's motion on May 4 and that defendant had not then set the motion for hearing within 90 days as required by local court rule 13. Defendant filed a reply to this motion, alleging (1) that he had been unsuccessful in obtaining a setting from Judge Nicol, and (2) that there was an agreement between counsel to continue the matter generally.

On September 10, 1982, Judge Nicol called up all pending motions. Attorney Stowe, apparently an associate of attorney Segall, appeared for defendant. All motions heard were taken under advisement. On November 22, 1982, Judge Nicol filed a written judgment order denying the motion to vacate the default judgment. In that order he discussed at length the tortured procedural history of the case, especially with reference to the matter of taking it to Judge Tucker. In summary, he held that there was no excuse for not setting the motion to vacate before him rather than Judge Tucker except for delay and resolved all questions of credibility against defendant and attorney Summers on their affidavits.

This concluded the first phase of this litigation.

On December 10, 1982, defendant filed yet another motion to vacate the default and judgment. The legal basis for the motion is entirely unclear. By divination we must assume that it was a post-judgment proceeding under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401). The factual basis alleged in the motion was that the defendant had settled the claim with the plaintiff for $95.60. Attached to the motion was defendant's personal affidavit attesting to copies of a cancelled check to plaintiff for $95.60 dated October 4, 1982, which contained a restrictive endorsement and of a letter of the same date from defendant to plaintiff stating in substance that negotiation of the check would be considered a settlement. These copies were likewise attached to the motion. Plaintiff filed written objections to the motion.

On December 16, 1982, Judge Nicol held an evidentiary

14

hearing on the defendant's motion to vacate. Neither the defendant nor attorney Summers were present; attorney Stowe was present on behalf of defendant and presented argument but no evidence. Plaintiff presented as a witness the national audit manager for Carte Blanche. In summary he stated that he had searched the records of plaintiff and was unable to find any such letter as was attached to the motion; that if such a letter were received and a settlement proposed, the attorney of record would have been involved; that no one at Carte Blanche had ever agreed to settle the claim; that no one at Carte Blanche had any recollection of the restrictive endorsement on the check; that the check might have passed through the system as a standard remittance, but that the letter would have been separated out for special handling; and that based on his review of the matter, he was of the opinion that the letter had never been received.

Upon plaintiff's request, Judge Nicol took judicial notice of another case in the circuit court of Champaign County wherein the defendant attempted the same method of vacating a judgment.

Defendant's counsel, attorney Stowe, asked the court to consider the defendant's affidavit attached to the motion of December 10 as evidence in the same manner as if the defendant had personally testified or, alternatively, to grant him a continuance to obtain witnesses. The court denied the continuance and stated that he would consider the affidavit as being in support of the motion.

At the conclusion of the hearing, Judge Nicol denied the motion to vacate the judgment, holding that the evidence failed to show any accord and satisfaction and that there was no settlement. On December 21, 1982, defendant filed his notice of appeal from the orders of February 8, November 22, and December 16, 1982.

The appeal must be considered in two parts: (1) the orders of February 8 and November 22, which entered the default judgment and denied vacatur thereof; and (2) the order of December 16, which stands on a different footing.

As to defaults and vacatur thereof: these are controlled

by section 2—1301(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1301(e).) The rules have undergone a considerable liberalization in recent times. In *People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841, 843, in speaking about the predecessor statute (Ill. Rev. Stat. 1969, ch. 110, par. 50(5)) to section 2—1301(e), the supreme court said:

> "Under this section, it is no longer necessary that such relief be sought on the precise grounds that there is a meritorious defense and a reasonable excuse for not having timely asserted such defense. The overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits."

Given the defendant's labyrinthine and Byzantine maneuverings in this case, the only injustice being done is to the plaintiff. Judge Nicol's comments in his order of November 22 with regard to the veracity of the affidavits in defendant's pleadings need no repetition here, except to say that we agree with them. Example: Summer's sworn statement that on the day after default was entered, or very soon thereafter, he appeared before Judge Tucker; judgment was on February 8, notice of hearing before Judge Tucker, April 14. Example: Summers' statement that he made "repeated efforts" to set the case before Judge Nicol; judge's order stating that he was constantly available from February 23 through August 12.

Some corollary items: Defendant argues that it was error not to grant him leave to file his answer and counterclaim. It is unclear whether those documents attached to his motion to vacate were meant to be filed instanter or merely tendered to be filed if the motion were allowed. In either event, they were supplemental pleadings, offered after judgment had been entered, and leave of court to file was required. (Ill. Rev. Stat. 1981, ch. 110, par. 2—609.) No such leave was ever sought.

Defendant argues what appears to be a *per se* rule in

his opinion that any default judgment should be set aside if request is made within 30 days. He cites *Smith v. National Drag Racing Enterprises, Inc.* (1974), 24 Ill. App. 3d 91, 320 N.E.2d 43. This is an abstract decision and the full opinion was not appended to defendant's brief in violation of Uniform Appellate Rule 8 (Ill. Rev. Stat. 1981, ch. 110A, par. 908), and we therefore refuse to consider it.

Defendant next attempts to rehash the matter of notice. He admitted receiving notification of the proceedings on January 27, even though it was his motion which was the subject matter. It was his duty to follow the progress of his case, notice or not. *Davis Furniture Co. v. Young* (1968), 102 Ill. App. 2d 415, 242 N.E.2d 457; *Johnson-Olson Floor Coverings, Inc. v. Branthaver* (1968), 94 Ill. App. 2d 394, 236 N.E.2d 903; *Widicus v. Southwestern Electric Cooperative, Inc.* (1960), 26 Ill. App. 2d 102, 167 N.E.2d 799.

Finally, defendant complains that the trial court assessed credibility on the basis of affidavits of defense counsel. It is difficult to see how he could do anything else, since neither the defendant nor his lead counsel saw fit to attend the hearing.

In short, there was no error in denying defendant's February 23 motion to vacate.

Defendant's next principal contention is that the trial court erred in its application of local rule 13, requiring motions to be set within 90 days. He first contends that there was an agreement to continue generally. In ruling on the credibility of the affidavits, the trial court disposed of any such agreement. If the affidavits were unworthy of belief as the trial court found, no such agreement existed and the 90-day limitation continued to run.

Defendant next argues, without support in the record, that settings are made in Champaign County by a "court coordinator" and asks us to take judicial notice of this system. Whether we would be so inclined is irrelevant, since Summers' own affidavit contradicts the argument. He stated under oath: "That I thereafter made repeated efforts to get a setting before the said Judge Nicol, all of which were to no avail, being told by *his secretary and*

*supportive staff* that no time was available." (Emphasis added.)

Local rule 13 has not been supplied with the record, but the parties appear to agree as to its content: motions must be set for hearing within 90 days of filing. A similar rule has been upheld by this court. *Martin Brothers Implement Co. v. Diepholz* (1982), 109 Ill. App. 3d 283, 440 N.E.2d 320.

There was no error in the application of local rule 13.

As to the December 16 order: defendant contends that the trial court erred in finding that the check was never negotiated. We do not find any such statement in the record. Judge Nicol ruled on the basis of accord and satisfaction and found no evidence of any settlement and that there was no settlement. More importantly, the debt was liquidated; it was a judgment. A partial payment of a fixed and certain demand which is due and not in dispute is not full satisfaction of the entire debt, notwithstanding any conditions placed by the debtor upon acceptance of payment. *A. & H. Lithoprint, Inc. v. Bernard Dunn Advertising Co.* (1967), 82 Ill. App. 2d 409, 226 N.E.2d 483; *Windlow v. Wagner* (1975), 29 Ill. App. 3d 172, 329 N.E.2d 911.

Defendant also asserts that it was error to deny him a continuance to obtain witnesses. Attorney Stowe, however, stated that he could not guarantee that witnesses would testify if the continuance was granted. He then proceeded with argument, thus waiving any claim of error.

With our patience sorely tried, we affirm the orders of the circuit court of Champaign County.

Affirmed.

MILLS and MILLER, JJ., concur.