HORACE H. THOMAS *et al.*

*v.*

GREGORY T. VAN METER, Receiver, *et al.*

*Filed at Ottawa November 9, 1896.*

1. RECEIVERS—*receiver's mere affidavit does not make him a party to foreclosure suit of his insolvent.* An affidavit filed in a foreclosure suit, stating merely that the affiant had been appointed as complainant's receiver, is not sufficient to make him a party to the suit, in the absence of an order of the court.

2. SAME—*order appointing receiver does not vest in him title to debtor's property.* An order of the court appointing a receiver under a creditor's bill does not confer upon him title to his insolvent's property.

3. SAME—*rights of receiver as to property transferred previous to his appointment.* The order of a receiver's appointment by the court under a creditor's bill, gives to him, as to property previously transferred, only the right to an action to set aside the transfers if

made in fraud of creditors, and his right must be asserted by affirmative action.

4. SAME—*to reach proceeds of a foreclosure sale the receiver must act affirmatively.* An order obtained in a foreclosure suit by the complainant's receiver who is not a party, reserving direction of the payment of proceeds of sale for a further decree, does not authorize such receiver to remain passive for years and to then assert his claims after the rights of third parties have intervened.

5. SAME—*rights of assignee of foreclosure decree—what is not notice of receiver's rights.* An affidavit filed by a receiver in a foreclosure suit, stating that he had been appointed receiver for the complainant, under a creditor's bill, is not such notice of his rights in the suit as will affect the rights of an assignee of the decree rendered therein, where the assignment was made six years after the creditor's bill had been dismissed for want of prosecution, and all action by the receiver in the foreclosure had been abandoned.

6. COURTS—*effect of nunc pro tunc order reinstating suit once dismissed.* A court has no power to reinstate a creditor's bill dismissed ten years before for want of prosecution, so as to give it effect for the period during which it had been off the docket.

7. LACHES—*effect of receiver's slumbering on his rights.* A delay of fourteen years after a decree has been rendered in a foreclosure suit, during which time the principal witness has died, will, in the absence of fraud, bar the right of a receiver of the complainant in the suit to have the proceeds of the decree paid to him, where rights of innocent third parties have intervened and there is no reasonable excuse for the delay.

*Thomas* v. *Van Meter,* 62 Ill. App. 309, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

ALEXANDER S. BRADLEY, for appellants.

U. P. SMITH, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellees filed their bill of complaint in this case June 1, 1892, against appellants and Emanuel Sandheimer, George F. Harding, Jr., (as administrator of the estate of Eli G. Runals,) Alice M. Kirby, John Coyne, Johanna

Coyne and Rodney M. Whipple, praying that the defendants should be decreed to assign, transfer and convey to the appellee Gregory T. Van Meter, as receiver of Eli G. Runals, deceased, certain real estate sold to the appellant Horace H. Thomas under a decree of foreclosure, and also the said decree, and the notes and mortgages upon which the same was founded, and that an order entered in said foreclosure cause March 24, 1888, providing that the proceeds of sale be paid to the appellant W. Beach Taylor, should be set aside.

The material facts alleged in the bill upon which the prayer for relief was founded were as follows: That on September 1, 1864, one Isaac Simmons gave two notes, amounting to $4000, to Eli G. Runals, and secured the same by mortgages; that on June 25, 1870, judgment was entered against Runals, in favor of the executors of the estate of Alonzo Campbell, for $22,792.28 and costs; that on April 7, 1874, Abner C. Harding, assignee of said judgment, filed his creditor's bill against Runals in the usual form, and after the death of said Abner C. Harding, about September, 1874, the appellee George F. Harding, as executor, became complainant; that on May 1, 1875, Runals filed a bill to foreclose the mortgages; that on December 22, 1875, a decree was rendered by default on the creditor's bill, ordering Runals to pay to Harding $30,388.04 and costs, and appointing John H. Roberts receiver, with the usual powers of receivers, and enjoining Runals from selling, transferring or assigning his estate, and ordering him to assign the same to said receiver on demand; that on March 1, 1876, a decree of foreclosure was entered in the suit of Runals against Simmons, finding $4680 due, decreeing the sale of the premises, and finding that Emanuel Sandheimer was entitled to receive out of the proceeds of the sale $4592.28 and Runals the balance; that on March 11, 1876, the receiver, Roberts, filed his affidavit in the foreclosure case, setting forth the filing of said creditor's bill and his appointment as receiver;

that on March 18, 1876, the court vacated so much of the foreclosure decree as provided for the payment of proceeds to the parties named and reserved that question for further order, leaving the decree requiring the master to bring the money into court; that the receiver, Roberts, resigned, and the court appointed Sidney P. Walker receiver November 12, 1877; that on April 7, 1878, Sandheimer, without consideration, assigned to Daniel Head, of Kenosha, all his right, title and interest in said decree, and Head on the same day assigned the same decree to Runals, and afterwards to appellant W. Beach Taylor, without any consideration, for the purpose of putting the title in said Runals and Taylor secretly; that receiver Walker died January 1, 1884; that on March 23, 1888, the above mentioned assignments were filed in the foreclosure suit, together with an assignment dated February 24, 1888, from Runals to Taylor, and another of the same date from Head to Taylor; that on March 24, 1888, an order was fraudulently procured substituting Taylor as the owner of the decree, and providing for payment of the proceeds to him; that the judgment against Runals was revived by a *scire facias* on May 11, 1889 ; that on November 5, 1890, said Runals died, and George F. Harding, Jr., was appointed his administrator about July 1, 1891; that in February, 1892, the appellee Van Meter was appointed receiver of Runals, who had died in 1890, to take the place of the former receiver, who died in 1884, and that the assignments were fraudulently made to defeat Harding and for the benefit of Runals, with full knowledge of the rights of Harding and the receiver.

The bill was answered by appellants and other defendants, appellants denying fraud and setting up their rights, and averring, among other things, that during all the time from March 18, 1876, up to the date of filing the bill in this case, for more than sixteen years, neither the complainants, nor any one for them, on behalf of said pretended claim set up in their bill, ever took any steps

or proceeding of any kind to establish said claim, but, on the contrary, that the creditor's bill of Harding was dismissed June 12, 1882, for want of prosecution.

The cause was heard and a decree was entered setting aside the order of March 24, 1888, providing for the payment of the proceeds of the sale to Taylor, and setting aside the assignments of the decree, and the sale, certificate and deed of the premises to Thomas, and ordering the premises re-sold, and the proceeds, less the costs and expenses up to the amount of $10,014, paid to George F. Harding, as executor, and that any balance of such proceeds should be brought into court for the benefit of Simmons. The Appellate Court has affirmed the decree.

At the hearing it was proved that the proceedings on the creditor's bill and in the foreclosure suit were substantially as above stated, except that there was no evidence of the alleged assignment from Head to Runals. The affidavit of Roberts, as receiver, which was filed in the foreclosure suit, stated that he had been appointed receiver, and he asked the court to protect his rights and interests, as such receiver, in the notes and mortgages foreclosed. The order was then made reserving any determination of the proper parties entitled to the moneys for a further order and decree of the court. The receiver did not intervene in the suit or file any petition or obtain any further action by the court. No parties were brought in, no one was ruled to answer anything, and no issue was made upon the subject, but it was apparently dropped or abandoned, so far as any further action was concerned. On November 9, 1877, said Roberts petitioned the court to relieve him from the receivership, and in his petition stated that he had not received, as such receiver, any money, property or thing, real or personal, whatever, into his possession, and never had occasion to perform any acts whatever as such receiver, and therefore he had no report to make. His resignation was accepted, and he was discharged and Walker was appointed. Walker

did nothing, and on June 12, 1882, the creditor's bill was dismissed for want of prosecution. This did not affect the personal decree which had been entered in that suit against Runals, but it was the end of all proceedings that were or could be taken under that bill by any action of the receiver. Sandheimer had made his claim in the foreclosure suit to the proceeds. His claim was of this nature: Haiman Lowy had, prior to March 1, 1875, loaned to Runals $1700 in cash, when, in order to secure payment of the same, Runals placed in his hands the securities for the payment of which the foreclosure suit was brought. After he received the notes from Runals he advanced to Runals on that security, from time to time, money amounting, with interest thereon, to the sum of $2892.28, and afterward sold the claims secured to Sandheimer. There was due Sandheimer from Runals on the date of the decree of foreclosure $4592.28, for which the notes and mortgages were security, and Sandheimer was entitled to that amount, leaving but $87.72 of the decree in which Runals had any interest.

Roberts, as receiver, could not step into the suit and by filing an affidavit take the proceeds of the sale from Sandheimer. The creditor's bill did not describe this claim or these securities, or seek to reach them. The mere order of appointment set up in that affidavit did not confer title to the property of Runals upon the receiver. (*Heffron* v. *Gage*, 149 Ill. 182.) And as to property previously transferred, the order of his appointment gave him no interest, but merely a right of action to set aside the transfer if it was in fraud of creditors. The only thing he could do, if anything, was to commence some proceeding in that or some other suit to set aside the conveyance to Lowy and Sandheimer. This required affirmative action upon his part. His mere affidavit that he had been appointed receiver in a creditor's suit against Runals, without any order of the court making him a party to the suit, was not sufficient to make him such a party.

(*Louisville, Evansville and St. Louis Consolidated Railroad Co.*
v. *Surwald,* 147 Ill. 194.) His affidavit did not make any
charge against the assignments nor allege any reason
for setting them aside. It merely stated that he was a
receiver for Runals, and if so, he would only be entitled
to receive the $87.72 due to Runals. The evidence shows
that any attempt to set aside the claim of Sandheimer
would have been utterly futile. If the receiver designed
to attack it his action was proper enough in order to
have the question reserved until he could, as receiver,
take action to test the validity of the assignments. But
he did nothing of the kind, and simply resigned, with the
statement that he had never had any property and had
nothing to do.

It is said on behalf of Harding that there was nothing
for the receiver to do, but that he might lay by for any
length of time until the proceeds of the sale should be
brought into court, and when anybody else should under-
take to get them he could make his claim. But we think
otherwise. It was necessary for him to set aside the
assignments upon some valid ground to entitle him to
interfere. He never became a party to the suit and made
no attempt to impeach the assignment.

Six years after the affidavit was filed in the fore-
closure suit, and when nothing had been done under the
creditor's bill, that bill was dismissed for want of prose-
cution. It was not pending anywhere or on any docket
until June, 1892, when this bill was filed and Harding
obtained an order of the court purporting to re-instate
that suit *nunc pro tunc* as of June 13, 1882, and he then
procured the appointment of the appellee VanMeter, a
clerk in his office, as receiver of the deceased Runals'
estate, and also procured the substitution, as defendant,
of his son George F. Harding, Jr., who had been ap-
pointed administrator of Runals' estate about July 1,
1891. At the time of the assignment to appellant Taylor
the creditor's bill had been dismissed for about six years

and the last receiver appointed had been dead four years. It was four years later that the order of re-instatement was made. It was not within the power of the court to resuscitate the creditor's bill and give it effect during the period of ten years while it was dismissed. During all that time there had been no suit pending, and no notice to anybody by that suit that they could not deal with Runals concerning his property, and while the personal decree against Runals under the creditor's bill was unaffected by the subsequent dismissal, that decree was sixteen years old when this bill was filed, and had long since ceased to be a lien. *Eames* v. *Germania Turn Verein*, 74 Ill. 54.

At the time of the assignment to Taylor he was justified, by the appearances, in the belief that any further proceedings by the receiver and the claim made in the foreclosure suit had been abandoned; and such was the fact, for Harding testified in this case that he did actually abandon the claim. He sought to explain his delay and present attempt to revive the claim, first, by saying that the matter was pending for some time in this court, and he was waiting to see whether he had a valid decree before going on in the collateral proceeding. So far as this excuse is concerned, it was shown that that case was finally ended by the opinion of this court filed January 31, 1877. (*Runals* v. *Harding*, 83 Ill. 75.) That excuse will not cover the period of delay. Next, he said he understood that the foreclosure suit was dismissed or defeated in some way, and relied upon this until his attention was called to the matter a year or so before this suit was commenced. The argument based on this testimony is somewhat inconsistent with the remainder of the argument. As against Taylor, it is contended that an affidavit filed in the foreclosure suit was perpetual notice to the whole world of Harding's rights, but that Harding could rely upon reports received from others, and need not take notice of what was being done in the case. It

was several years after the assignments to Taylor were filed and the order substituting him as owner of the decree that Harding commenced this suit. It appears that after the assignment to Taylor, when there was an attempt to sell the property, Alice M. Kirby, the owner of the fee, obtained an injunction on May 1, 1888, against the sale, and the matter was litigated by Taylor and Mrs. Kirby in the circuit court and this court until January 18, 1892, when the decree dismissing her bill was affirmed. Perhaps Harding thought that Mrs. Kirby would be successful in her suit and was waiting to see the outcome of that litigation. While he was under the impression that Taylor would be defeated he considered his claim abandoned; but after Taylor had litigated the matter with Mrs. Kirby to a successful termination, Harding concluded that his claim was not abandoned; and by this suit asked a court of equity to deliver the fruits of the litigation to him.

Sandheimer was the owner of the decree, except the small interest of Runals, until April 3, 1878, when he made an assignment of the same to Daniel Head, in consideration of $1000 in cash and one hundred acres of land in Indiana, conveyed to Head by one Childs. At the same time Runals made an assignment of his share, which was $87.72 and interest, to Head. There was no evidence of an assignment by Head back to Runals, as averred in the bill. The decree was assigned to Taylor February 24, 1888, by assignments executed by Head and Runals. Taylor gave for the decree a note of Elisha Gray for $2500, secured by telautograph stock, and the note was paid. It is claimed, and the evidence tends to prove, that these transactions were in the interest of Runals, and that the $1000 paid to Sandheimer was loaned to Runals by Franklin Head and was afterward repaid by Runals. It does not appear that Runals had any interest in the land in Indiana. But if it be admitted that Runals was the equitable owner of the decree after the assignments

were made to Head, there would be nothing to prevent
Taylor from purchasing it if the transaction was free
from fraud. If Taylor had taken notice of every exist-
ing fact he would have found a judgment at law and a
personal decree against Runals, which had ceased to be
liens; a reservation in the foreclosure suit of the question
who should receive the proceeds of the sale,—and this
made upon the affidavit of a receiver who took no further
steps in the matter, but subsequently resigned his re-
ceivership with the statement that he had done nothing
and had nothing to do as receiver; the creditor's bill dis-
missed six years before, and the last receiver dead more
than four years.

There is no evidence tending to prove any fraud on
the part of Taylor, or that he participated in any manner
or to any extent in aiding Runals to conceal property
or defraud creditors. The matter was in litigation and
a long litigation followed the purchase. Under all the
circumstances, the consideration was not so inadequate
as to affect the right of the purchaser or give notice to
him of any fraud on the part of Runals, if there was any
such fraud. There is not a particle of proof that the ap-
pellant Thomas ever knew or saw Runals, or ever heard
anything about any fact preceding the assignments to
Taylor. The finding that he had full notice that the
assignments were without consideration and fraudulent,
—to cover up the property of Runals,—is without any
basis whatever in the evidence. Assertion that a trans-
action is a sham and fraud, and made for unlawful pur-
poses, to hinder, delay and wrong others, can be furnished
in every case. We are not able to find any evidence upon
which the assertion of fraud in this case can rest.

But if Harding ever had any enforceable claim, we
think it was lost by unreasonable delay. There is no
rule of equity more familiar than that it will lend its aid
only to those who seek it in apt time. Here there was
not only a delay of sixteen years, but the principal wit-

ness to the transactions had died in the meantime, after a lapse of fourteen years from the entry of the decree which Harding, by the bill in this case, sought to appropriate. And there was no reasonable excuse for such delay. Under such circumstances relief should be denied to the tardy applicant who slept so long upon his rights, if he ever had any.

The judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded.*