Although the named plaintiff is Mark D. Black, the parties at the outset of the hearing *Page 523 
before the trial court stipulated that the only plaintiffs remaining are the plaintiffs Welch and the plaintiffs Clothier, the complaints of the other plaintiffs having been abandoned.
The defendant Schenectady Discount Corporation, hereinafter referred to as Schenectady, is a New York corporation now authorized to do business in Connecticut. In the action before us, Schenectady financed the inventory of mobile homes sold by NuTrend, Inc., a Connecticut corporation controlled by Mr. and Mrs. Billy Joe Sere. Schenectady had a security interest in the inventory, i.e. "all mobile homes and campers" of the dealer, NuTrend. Copies of the financing statement, as required by the Uniform Commercial Code, were on file in the secretary of state's office as of December 6, 1971. See General Statutes §§ 42a-9-302, 42a-9-401. NuTrend has defaulted on its obligations to Schenectady, and the trial court has found that subsequent events have revealed a chaotic state of affairs in respect to the various trust agreements between Schenectady and NuTrend, replete with the fraud and deception practiced by both NuTrend and Sere.
Regarding the Clothier transaction, the facts may be summarized as follows: Schenectady was the holder of a trust receipt in the amount of $6358, covering a Schult mobile home, serial No. 11283, and executed by NuTrend on June 8, 1972. On that date, the Clothiers signed an agreement with NuTrend to purchase a Beaumont mobile home, for which they paid $9276 in cash. But Sere then indicated to the Clothiers that the Beaumont had been damaged by rain and that he was unable to make delivery of that home to them. He effectuated a substitution of the Schult mobile home referred to above. Schenectady, however, has never been paid the sum lent to NuTrend for which the Schult was security. *Page 524 
Schenectady now seeks to repossess that mobile home from the Clothiers, claiming that its security interest continues despite the "sale" to the Clothiers.
Under the terms of the financing statement filed by Schenectady covering all of NuTrend's inventory of mobile homes and campers, including the Schult No. 11283, the mobile homes could be sold by NuTrend without permission of Schenectady. But Schenectady argues that the across-the-board exchange of the Schult for the damaged Beaumont did not amount to a "sale" within the contemplation of the parties to the trust receipt. The transaction, Schenectady argues, was not authorized, and consequently, under § 42a-9-306 (2) of the General Statutes, Schenectady's security interest continues in the collateral notwithstanding the transaction between NuTrend and the Clothiers.
Under § 42a-9-306 (2), a security interest continues in the collateral, "[e]xcept where this article otherwise provides, ... notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise." One of the sections referred to by the phrase "[e]xcept where this article otherwise provides" is § 42a-9-307. It states the conditions under which buyers of goods take free of a security interest even though it is perfected, as in the instant case, and even though the disposition was not authorized. See Connecticut General Statutes Annotated (West Ed.) § 42a-9-306, comment 3, p. 457.
Section 42a-9-307 (1) provides that "[a] buyer in ordinary course of business as defined by subsection (9) of section 42a-1-201 ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." The definition of buyer in *Page 525 
the ordinary course of business in § 42a-1-201 (9) restricts the application of § 42a-9-307 (1) to buyers "from a person in the business of selling goods of that kind." Thus, the subsection applies primarily to buyers from inventory, as, for example, buyers of NuTrend's mobile homes or campers. The "buyer in ordinary course of business" is further defined in § 42a-1-201 (9) as one who buys "in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party." Schenectady does not raise the issue of good faith or of knowledge by the plaintiffs Clothier that the transaction might have violated the terms of Schenectady's security agreement with NuTrend. Rather it argues that the transaction did not amount to a "sale" and therefore the protections of § 42a-9-307 (1) are not available to the plaintiffs Clothier.
But the definition of "buyer in ordinary course of business" expressly provides that "`[b]uying' may be for cash or by exchange of other property." § 42a-1-201 (9). Although Schenectady argues that there is "not one scintilla of credible evidence before this court to support the finding that they [the plaintiffs Clothier] bought the Schult," it agrees that there was an exchange of the Schult for the Beaumont and that $9276 in cash had been paid by the Clothiers to NuTrend for a "M.H." (motor home).
Under § 42a-9-307 (1), Schenectady would have lost its security interest in the Schult if it had been sold outright to a buyer in the ordinary course of business; Schenectady cannot complain if the Schult was delivered to the Clothiers in exchange for the Beaumont they had agreed to buy, for such a transaction is within the meaning of "buying" under § 42a-1-201 (9). The Clothiers were buyers of the Schult in the ordinary course of business, and under *Page 526 
§ 42a-9-307 (1) they are protected against the enforcement of Schenectady's security interest in the mobile home.
Turning to the Welch transaction, the mobile home, American No. 0419, which the Welchs purchased from NuTrend on September 5, 1972, had been previously owned by Ethel M. Heser. Welch knew of this prior ownership. The mobile home was identified as one for which there is a certificate of title on file with the motor vehicle department showing Ethel M. Heser as owner, Schenectady as first lienholder, and NuTrend as seller. The Welchs paid Sere $7495, and the only document of sale the Welchs possess is a receipt for money as "payment for mobile home in full," signed by Sere. Welch testified that he signed an application for a title certificate but had never received one from either NuTrend or Sere. Mrs. Heser had in fact defaulted on the payments on her retail instalment contract. She apparently returned possession of the mobile home to NuTrend but has never conveyed title to the home to either NuTrend or the plaintiffs Welch. Schenectady has never released nor assigned its interest in the mobile home. NuTrend then sold the home to the Welchs, as set forth above. When Schenectady sought information relative to the Heser default, it found the Welchs in possession of the mobile home. They refused to relinquish it to Schenectady on demand.
In the case of this mobile home, Schenectady claims that as the holder of a perfected security interest created by means of a retail instalment contract between it and Ethel M. Heser, it is entitled to priority over any subsequent purchaser from Mrs. Heser upon her default.
In National Shawmut Bank v. Jones, 108 N.H. 386,388, involving a replevin action brought by the bank, *Page 527 
the holder of a security interest in a used car previously traded in to an automobile dealer who sold new and used cars to the public, the court explained that §§ 9-307 (1) and (2) of the Uniform Commercial Code are the only two provisions of article 9 under which a buyer of goods can claim to take free of a security interest where a sale, exchange or other disposition of the collateral was without consent of the secured party. It held that § 9-307 (1) permits the buyer to take free of such a security interest, but only if created by his seller. Since the trial court in the instant case found that the Welchs bought from NuTrend, and Schenectady claims not on the strength of a security interest created by NuTrend but on the retail instalment contract signed by Ethel M. Heser, this subsection is of no avail to the Welchs.
In National Shawnut Bank v. Jones, supra, the court also held that the buyer did not take free of the security interest by reason of the provisions of § 9-307 (2) of the Uniform Commercial Code, relating to consumer goods, since the secured party had protected his interests by filing a financing statement covering the goods prior to their purchase by the buyer. The same reasoning applies in the instant case, except that in Connecticut notation of a security interest in an automobile is to be made on the certificate of title and not by filing a financing statement. General Statutes §§ 42a-9-302 (3), (4); see Muir v. Jefferson Credit Corporation,108 N.J. Super. 586. In the instant case, it appears to be undisputed that a valid certificate of title had been issued to Mrs. Heser listing Schenectady as the lienholder. The Welchs applied for, but never received, a certificate of title to the American mobile home.
Inasmuch as Schenectady has demonstrated to us the possible validity of its right to possession of *Page 528 
the mobile home now in the possession of the plaintiffs Welch, we conclude that the injunction barring its right to institute a replevin action cannot stand.
 There is error in part, the injunction as it applies to the plaintiffs Welch is dissolved and the case is remanded for further proceedings not inconsistent with this opinion;