DONNA GRAS, Plaintiff-Appellant, *v.* ROBERT CLARK *et al.*,
Defendants-Appellees.

Second District No. 76-63

Opinion filed March 22, 1977.

Jacob Pomeranz, of Cornfield & Feldman, of Chicago, for appellant.

Louis H. Goebel, of Goebel & Kal, of Chicago, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff, who had been a tenured professor at Elmhurst College, sued to enjoin violation of her employment contract and to recover damages. Defendants pleaded a written resignation which plaintiff had submitted on November 1, 1972, to be effective at the end of the 1973-74 academic year. Further pleadings showed that plaintiff had notified the defendants in August of 1973 that she was withdrawing her resignation but that defendants advised her that she would not be allowed to do so. Defendants' motion for summary judgment was granted, based upon the pleadings, affidavits and a transcript of plaintiff's testimony at a hearing on a motion for a preliminary injunction. Judgment was entered in favor of the defendants from which plaintiff appeals.

The affidavit of Robert J. Clark, the dean of the faculty of Elmhurst College, in substance stated that either in the month of July or August of 1972, Donna Gras advised him of her decision to retire as a member of the teaching staff in the fall of 1974; that on or about November 1, 1972, the verbal decision was confirmed in writing by the following letter which plaintiff handed to Clark:

"This is to confirm my decision to retire in the Fall of 1974. I had already mentioned it to you and also Dr. Frick this summer. However, I understand that a written confirmation is necessary at this time."

It was further stated that in reliance on the resignation Clark conferred with plaintiff and with another member of the teaching staff, Paulette Hatmaker, and that both of the parties agreed to accept an appointment for the 1973-74 teaching program. This was confirmed and accepted by the following letter sent by Dr. Frick to Mrs. Gras dated December 4, 1972:

"For financial reasons, the Executive Committee of the Board of Trustees has authorized that your appointment for 1973-74 will be half-time. During this year your full fringe benefit programs will continue.

You are an outstanding teacher and we do appreciate your services to Elmhurst College.

As indication that you have received this notice of appointment

of half time for 1973-74, please countersign a copy of this letter and return the same to Dean Clark's office by December 12."

Mrs. Gras countersigned the letter. However, on September 14, 1973, plaintiff submitted a letter advising that she was withdrawing her resignation.

In answer to interrogatories Dean Clark stated that he had various conversations with Mrs. Gras beginning in 1972. He said that he was aware of the possibility of her resignation as early as the summer of 1972 when Mrs. Gras advertised the sale of personal items in her apartment. He and his wife visited with her and she told him that she was beginning to sell her personal things so she and her husband would be able to move to France in 1974. On October 9, 1972, she again mentioned the possibility of retirement. On October 19, 1972, Dean Clark met with Mrs. Devaud, who was chairperson of the French department, and told her that she would have to reduce her department by one person; that Mrs. Devaud asked if it would be possible to effect the reduction by having Mrs. Gras and another member of the department teach on a half-time basis for 1973-1974 and have the other member continue to teach after Mrs. Gras retired; that he told Mrs. Devaud that this would be possible but that it would be necessary to have a written statement from Mrs. Gras confirming her termination of employment; and that on or about November 1st, Mrs. Gras came to his office without prior appointment and gave him the letter confirming her termination. In further answer to interrogatories, Dean Clark included a letter to Mrs. Hatmaker dated December 6, 1972:

"As I told you in my office the other day, the following conditions pertain to your situation regarding the reduction in faculty.

First of all, barring any unforeseen circumstances, when Mrs. Gras retires you will be able to return to the French Department on a full-time basis for the 1974-1975 academic year. Secondly, your salary for 1973-1974 academic year will be half of what your full salary would have been, including whatever increase is possible. Finally, as the President said in his letter, your fringe benefit program will continue for the 1973-74 academic year as though you were a full-time professor."

Further, he answered that in August of 1973, Mrs. Gras came to the office and told him that she and her husband had been to France where they planned to retire, and had found that the retirement income would not be sufficient, at which time she asked him if she could withdraw her confirmation. He told her that he did not see how it would be possible to change the commitments and plans which had been made for the French department. He talked to her again on September 20, 1973, when she told him that she had met with Mrs. Devaud and another person in accordance

with the appeal procedures of the college and that they had suggested she might teach on a part-time basis in 1974-75 in the evening session or find other suitable employment on the campus, such as the library. She also asked if she could be hired as an assistant professor in the French department for the academic year 1975-76. Dean Clark told her he would look into the possibility as a part-time employee but that it would be impossible to hire her for the 1975-76 academic year because of her voluntary termination.

Dr. Ivan E. Frick, the president of the college, answered interrogatories stating in substance that Mrs. Gras had informed him orally that she would terminate her employment by fall of 1974; that this was volunteered and not solicited; that he asked her to put her decision in writing; that letters of employment were issued to tenured faculty in the usual course of procedure in April or May of each year; that the college did not have a policy regarding written resignations; that official acceptance of Mrs. Gras' letter of resignation was made on December 4, 1972, by the letter offering half-time employment for 1973-1974; and that a memorandum was sent to all faculty members by the dean on December 12, 1972, which included the following memorandum from the dean of the college to the faculty:

"I recommend that there be one full-time equivalent reduction in the French Department. The French Department currently has three professors. Although the number of majors has remained fairly good, the over-all enrollment in French is not very high. In order to effect the reduction, I recommend that the following action be taken. One French professor plans to retire in 1974. This person and another member of the department are willing to teach on a half-time basis each during the next academic year. If they do this, and if the current chairman of the department remains full-time, this will give us two full-time equivalents in the Department of French. I further recommend that when the one retires in 1974, the other be allowed to return to her full-time status."

In plaintiff's testimony she said that in actual years she had been in the department 20 years, Mrs. Devaud 10 years and Mrs. Hatmaker 7 years. In June of 1972 she said she informally voiced tentative plans for retirement in two years but that it was very tentative. She spoke of her plans to President Frick and Dean Clark. In the fall of 1972 she had a conversation with Mrs. Devaud at the beginning of the school year and told her of her tentative plans. Later in the fall plaintiff found out that there were budgetary difficulties and there would be a reduction in faculty. It was then that Mrs. Devaud called a meeting saying that plaintiff would have to sign a confirmation in writing that she was retiring in two years. She said Mrs. Devaud was insistent and pleaded and entreated her to sign to "save them all," so she had to do it that very

morning without an opportunity to discuss the matter with her husband. She was 57 at the time and the retirement age was 65. She acknowledged receiving the letter that she would teach for the '73-'74 year part time and receive half salary. She did not protest the decision to work half time because she was trying to help the department. In the summer of 1973 she and her husband went to Europe and found that since the previous visit there had been a second devaluation and inflation was rampant in France where they planned to live so they decided it was financially impossible for her to retire. On returning from Europe she saw Dean Clark on August 16, 1973, and asked him to review the question of the French department. The dean refused to have the appeal board consider the department.

On cross-examination Mrs. Gras testified that she placed an advertisement for the sale of personal items in their apartment in the summer of 1972 and that the idea of retiring early had come about because the college was selling the property where they lived and they knew that eventually when she reached age 65 they would be leaving Elmhurst.

■■ The Elmhurst College faculty manual incorporated in plaintiff's complaint provides in pertinent part:

"The permanent tenure of a member of the teaching faculty shall continue until death, resignation, retirement because of age or disability, discontinuance of his teaching position because of decline in enrollment or lack of funds, or termination of his appointment for adequate cause."[1]

Plaintiff contends that the letter of intention to resign was given without consideration, was withdrawn prior to acceptance by defendants, and that there was no showing that the defendants had relied on her letter to their detriment. Defendants contend that the letter of resignation in itself terminated plaintiff's contractual relationship with the college. In addition, they contend that the record shows that the resignation was accepted and that they made faculty plans based on the resignation and this fact was known to plaintiff prior to her attempted withdrawal.

We conclude that the trial judge properly entered the summary judgment in favor of the defendants on the record before him.

■■ In effect, the plaintiff's letter of intention to resign on the prospective date fixed by the end of the 1973-74 academic year was a voluntary relinquishment of her right to claim continuing contractual status as a tenured teacher. (See Annot., 145 A.L.R. 1078 (1943); *cf. Gardner v. Hollifield*, 96 Idaho 609, 533 P.2d 730, 732 (1975).) The resignation could have been withdrawn at any time prior to the effective

---

[1] Such regulations are customarily held to be a part of the employment contract. See Annot., 6 A.L.R. 3d 1018 §7 (1975). See also *Koch v. Board of Trustees*, 39 Ill. App. 2d 51, 56-7 (1963).

date if it had either not been accepted by the employer or not acted upon by the employer in a manner to prevent the employee from insisting on a revocation.

■■ The doctrine of waiver is based upon the principle that one may dispense with something of value by a voluntary act done with full knowledge of the rights involved and with an intention to relinquish those rights. (*Jacksonville Hotel Building Corp. v. Dunlap Hotel Co.*, 264 Ill. App. 279, 318-19 (1931), affirmed in part and reversed and remanded with directions on other grounds in 350 Ill. 451 (1932).) When consideration for the waiver is lacking the resignation may be supported by proof of conduct which gives rise to an estoppel. *Jacksonville Hotel Building Corp. v. Dunlap Hotel Co.*, 264 Ill. App. 279, 319 (1931); 28 Am. Jur. 2d *Estoppel and Waiver* §§158, 159 (1966).

It is undisputed from the record before us that Mrs. Gras' letter of resignation was a clearly evident statement of her intention to waive her right to continuing contractual employment as a tenured teacher effective at the close of the 1973-1974 academic year. It clearly appears that Mrs. Gras was acting with full knowledge of the rights which she would be giving up.

■■■ A written resignation tendered to the proper officials and filed by them, absent other regulations by contract or statute, is considered accepted. (See *Bauer v. Saper*, 133 Ill. App. 2d 760, 762 (1971).) Upon acceptance of a tenured teacher's resignation even though the effective date is prospective the employing authority has the right to refuse to honor a withdrawal of the resignation. (See *Shade v. Board of Trustees*, 21 Cal. App. 2d 725, 70 P.2d 490, 491 (1937).) The delivery of Mrs. Gras' written resignation to the president of Elmhurst College upon his request after plaintiff's previous oral statements that she intended to resign amounted to an acceptance of the resignation. The college could thereafter refuse a subsequent withdrawal. In any event, plaintiff's acceptance of half time employment for the school year 1973-74 and the additional circumstance that the college acted on plaintiff's resignation in planning a reduction in the French department faculty is sufficient to estop plaintiff from claiming that the college was not thereafter permitted to prevent the withdrawal of her resignation.

The material facts are undisputed. The legal effect of the tender of the resignation and the legal effect of the events subsequent to the tender involved questions of law which we conclude the court properly resolved in favor of defendants. The judgment is therefore affirmed.

Affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.