MARTIN BROTHERS IMPLEMENT CO. *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* DELBERT DIEPHOLZ, d/b/a Mattoon Farm Service, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee.—(Paul F. Compton, Defendant and Cross-Appellee; Larry Allen, d/b/a L & L Construction Company, Third-Party Defendant.)

Fourth District   No. 17680

Opinion filed September 13, 1982.

Dotson Law Office, of Mattoon, and Edward C. Eberspacher III, of Dove and Dove, of Shelbyville, for appellant.

Jack C. Vieley, of Peoria, for appellees.

JUSTICE LONDRIGAN delivered the opinion of the court:

Defendant Diepholz appeals from the entry of summary judgment against him in an action for conversion of a tractor. Plaintiffs cross-appeal from the entry of summary judgment in favor of defendant Compton.

Larry Allen purchased a Caterpillar model D-5 bulldozer from Martin Brothers on June 14, 1976. The purchase of the bulldozer was financed on an installment basis and Martin Brothers retained a security interest in the bulldozer. Martin Brothers perfected its security interest by filing a financing statement with the Secretary of State on June 15, 1976.

Allen sold the bulldozer to Delbert Diepholz, a farm implement

dealer, on May 3, 1977, for $19,350. Diepholz did not check with the Secretary of State regarding any outstanding security interest against the bulldozer and he had no actual knowledge of Martin Brothers' security interest. Compton purchased the bulldozer from Diepholz for $29,000. Compton testified that the sale took place in May of 1977. Diepholz, in an answer to an interrogatory, claimed the sale took place in December of 1979.

Allen defaulted on his obligation to the plaintiffs on June 15, 1977. Plaintiffs brought suit against Allen in Champaign County. On June 23, 1978, plaintiffs filed suit against Diepholz in Coles County. Diepholz joined Allen as a third-party defendant. Allen executed an agreement with Diepholz on August 17, 1978, agreeing to hold Diepholz harmless and assuming all responsibility for the transaction involving the bulldozer. On October 13, 1978, Allen conditionally assigned his beneficial interest in a land trust to plaintiffs as security for the payment of the judgment entered in the Champaign County case. In exchange for the conditional assignment, plaintiffs agreed not to pursue other remedies it might have had against Larry Allen.

Allen made payments on the Champaign County judgment until 1981, at which point he ceased making payments on the judgment. No further action was taken in the Coles County proceeding during this period. Plaintiffs filed a motion for summary judgment against Diepholz on June 29, 1981. Diepholz filed an affidavit in opposition to the motion, claiming that he had relied on the agreement between Allen and plaintiffs in the Champaign County proceeding and had substantially changed his position. The trial court granted plaintiffs' motion and entered judgment for $6,300 on August 20, 1981.

Plaintiffs also filed an amended complaint against Compton on August 20, 1981, seeking $29,000 in damages and replevin of the bulldozer. Compton filed a motion for summary judgment on September 2, 1981. In an affidavit accompanying the motion Compton stated that he purchased the bulldozer from Diepholz, who was engaged in the business of selling such equipment; that he paid fair market value for the bulldozer; and that he was unaware that the sale was in violation of Martin Brothers' security interest. The trial court granted Compton's motion on November 31, 1981.

Diepholz raises two issues on appeal: (1) whether the trial court erred in granting summary judgment without first ruling on his motion to dismiss and his motion to strike the complaint; and (2) whether the trial court erred in granting plaintiffs' motion for summary judgment because of the existence of genuine issues of material fact. Plaintiffs, in their cross-appeal, argue that the trial court erred in

granting Compton's motion for summary judgment.

Diepholz contends that the trial court ignored his motion to dismiss and his motion to strike. Plaintiffs deny this and state that Diepholz failed to call his motions for hearing within 90 days, as required by Rule IV(c) of the rules of Practice of the Fifth Judicial Circuit. This being the case, plaintiffs argue, the trial court was within its power in ruling on plaintiffs' motion for summary judgment and ignoring Diepholz' motions.

Diepholz has waived any objection to the trial court's handling of his motions. Circuit courts have the power to enact and enforce rules regulating their calendars and dockets, as long as the rules do not conflict with supreme court rules or statutory law. (See Ill. Rev. Stat. 1979, ch. 110, par. 2(2).) Valid rules of practice of the circuit courts have the binding effect of a statute and are to be obeyed. (*Axtell v. Pulsifer* (1895), 155 Ill. 141, 39 N.E. 615; *Vasco Trucking, Inc. v. Parkhill Truck Co.* (1972), 6 Ill. App. 3d 572, 286 N.E.2d 383.) Diepholz failed to take the necessary steps to bring his motions before the court in a timely manner. He will not now be heard to complain that his motions were ignored, having slept on his rights below.

Diepholz also argues that genuine issues of material fact precluding summary judgment do exist. He contends that whether the conditional assignment by Allen to the plaintiffs was a future advance, which would release Diepholz from liability under section 9—307(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—307(3)), was a genuine issue of material fact. Furthermore, Diepholz maintains that genuine issues of fact are present with respect to the affirmative defenses he offered below: *laches*, waiver and equitable estoppel.

Summary judgment under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57) is a drastic method of terminating litigation, but its use in proper cases is encouraged. (*Green v. McClelland* (1973), 10 Ill. App. 3d 350, 293 N.E.2d 629.) The function of the trial court on a motion for summary judgment is not to try the facts presented, but to determine whether a triable issue of fact exists. (*Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 392 N.E.2d 1352.) The trial court determines whether, if what was contained in the pleadings and affidavits was presented at trial, the case would go to the jury. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

Section 9—307(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—307(3)) states that, under certain conditions, a buyer other than a buyer in the ordinary course of business takes free

of a security interest which secures future advances. The term "future advance" is not defined by the Code. Black's Law Dictionary defines "future advances" as "[m]oney lent after a security interest has attached and secured by the original security agreement." (Black's Law Dictionary 609 (5th ed. 1979).) Using this definition, it is clear that the conditional assignment by Allen in favor of plaintiff was not a future advance. Plaintiffs lent no money to Allen; they merely took the assignment as additional security for the payment of the judgment in the Champaign County case. No genuine issue of material fact was present.

Diepholz also maintains that genuine issues of material fact exist with respect to his affirmative defenses of *laches,* waiver and equitable estoppel. The particular provision of the conditional assignment which Diepholz contends supports his position that jury questions were present with respect to his affirmative defenses is set forth below:

> "The condition of this Conditional Assignment is that it is given purely as security for the payment of the judgment herein entered in favor of the Grantees and against LARRY D. ALLEN in the above-described lawsuit; and that this Conditional Assignment shall be null and void upon the occurrence of any one of the following events:
>
> 1. Satisfaction of the judgment hereinbefore set forth;
>
> 2. The Grantees, their agents, attorneys or employees pursuing collection remedies against LARRY D. ALLEN or any other person or organization, other than such as provided herein, at any time prior to the expiration of _____ days from the date hereof; or
>
> 3. LARRY D. ALLEN is prosecuted for acts involving the transfer of the machine which is the subject matter of said lawsuit."

■■ ■ *Laches* "has been defined to be such a neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate as a bar in a court of equity." (*Freymark v. Handke* (1953), 415 Ill. 360, 366, 114 N.E.2d 349, 352.) Failure to prosecute an action after its commencement can constitute *laches.* (*Thomas v. Van Meter* (1896), 164 Ill. 304, 45 N.E. 405; *Trustees of Schools v. City of Chicago* (1941), 308 Ill. App. 391, 32 N.E.2d 180.) In *Thomas,* a delay of 14 years after the entry of a decree of foreclosure acted to bar the right of complainant's receiver to recover the proceeds of the decree where the principal witness had died during

the period of delay, rights of innocent parties had intervened and no reasonable excuse existed for the delay.

■ In the present case, plaintiffs *did* delay further prosecution of the Coles County case against Diepholz for approximately 2½ years. However, Diepholz failed to move to dismiss the action for lack of prosecution and has failed to establish any facts which would indicate injury or prejudice to him as a result of the delay. In his affidavit, Diepholz makes a bare conclusory allegation that he is unable now to protect himself. This is not sufficient to establish a genuine issue of material fact on the issue of *laches*.

■ Waiver is the intentional relinquishment of a known right. (*Gras v. Clark* (1977), 46 Ill. App. 3d 803, 361 N.E.2d 316.) The facts of this case belie Diepholz' claim that plaintiffs waived their rights against him. The language of the conditional assignment does not bar any further action against Diepholz. Nor did plaintiffs dismiss the Coles County proceeding it had brought against Diepholz. The evidence before the trial court could not support an inference that plaintiffs intentionally relinquished their right of action against Diepholz.

■ Equitable estoppel or estoppel *in pais* is a doctrine developed by the chancery courts to prevent a party from asserting his rights where the assertion of those rights would work a fraud or an injustice on another party. (18 Ill. L. & Prac. *Estoppel* sec. 22 (1956).) In *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 365 N.E.2d 1019, this court listed six factors which must be present in order for the doctrine of equitable estoppel to be available:

"(1) Words or conduct by the party against whom the estoppel is alleged constituting either a misrepresentation or concealment of material facts; (2) knowledge on the part of the party against whom the estoppel is alleged that representations made were untrue; (3) the party claiming the benefit of an estoppel must have not known the representations to be false either at the time they were made or at the time they were acted upon; (4) the party estopped must either intend or expect that his conduct or representations will be acted upon by the party asserting the estoppel; (5) the party seeking the benefit of the estoppel must have relied or acted upon the representations; and (6) the party claiming the benefit of the estoppel must be in a position of prejudice if the party against whom the estoppel is alleged is permitted to deny the truth of the representations made. [Citation.]" 50 Ill. App. 3d 108, 110, 365 N.E.2d 1019, 1020-21.

Diepholz produced no evidence establishing any words or conduct

by plaintiffs amounting to a misrepresentation of the material fact. Diepholz also failed to show that plaintiffs intended or expected their conduct to result in some sort of action by Diepholz.

Diepholz failed to establish that any genuine issue of material fact existed with respect to any of his affirmative defenses. The trial court acted properly in granting plaintiffs' motion for summary judgment against Diepholz.

Plaintiffs cross-appeal from the trial court's entry of summary judgment in favor of Compton. The trial court found that Compton was a buyer in the ordinary course of business and that Diepholz was a person engaged in the business of selling used heavy equipment. Therefore, the trial court reasoned, Compton took free of plaintiff's perfected security interest under section 9—307(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—307(1)).

Section 9—307(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—307(1)) provides:

> "A buyer in ordinary course of business (subsection (9) of Section 1—201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

■ The trial court's decision was clearly erroneous. While Compton was undoubtedly a buyer in the ordinary course of business (See Ill. Rev. Stat. 1979, ch. 26, par. 1—201(9)), he could take free of only those security interests created by his seller. No Illinois court has decided a case involving a buyer in the ordinary course of business and a "remote" secured party. However, the decisions of the reviewing courts in our sister States are unanimous in holding that section 9—307 does not protect a buyer in the ordinary course of business from a security interest created by a former owner who is not the buyer's seller. *Black v. Schenectady Discount Corp.* (1974), 31 Conn. Supp. 521, 324 A.2d 921; *Commercial Credit Equipment Corp. v. Bates* (1980), 154 Ga. App. 71, 267 S.E.2d 469; *National Shawmut Bank v. Jones* (1967), 108 N.H. 386, 236 A.2d 484; *Muir v. Jefferson Credit Corp.* (1970), 108 N.J. Super. 586, 262 A.2d 33; *Lindsley v. Financial Collection Agencies, Inc.* (1978), 97 Misc. 2d 263, 410 N.Y.S. 2d 1002; see generally 4 Anderson, Uniform Commercial Code sec. 9—307:9 (1971).

In *Security Pacific National Bank v. Goodman* (1972), 24 Cal. App. 3d 131, 100 Cal. Rptr. 763, the California court was faced with a factual situation similar to the one presented in the case at bar. The bank lent money to A in exchange for a security interest in A's boat.

A later sold his boat to B, a dealer in boats. B sold to C, a buyer in the ordinary course of business. A defaulted on his loan and the bank sued C for possession of the boat. The court held for the bank because the security interest in question was not created by C's seller (B), but by A, a remote party. Under these circumstances, the court found that the protection given a buyer in the ordinary course of business by section 9—307(1) was not available to B.

We recognize that the result which flows from this construction of the statute may seem unjust. The buyer who purchases goods from a seller who has created the security interest takes free of that interest even though the buyer could conceivably discover the existence of a security interest by a title search. When a security interest exists in favor of a remote seller, however, that same buyer will not take the goods free and clear of the security interest, even though the burden of locating the remote party's interest is much greater. However, this is consistent with the general rule set forth in the Code that a security interest continues in collateral despite a sale or other disposition of that collateral. (Ill. Rev. Stat. 1979, ch. 26, par. 9—306(2).) Section 9—307(1) is an exception to this general rule of continuing security. Furthermore, our holding is in accord with the decisions rendered in other States and thus is in keeping with the goal of national uniformity underlying the Code. See Ill. Rev. Stat. 1979, ch. 26, par. 1—102(2)(c).

The trial court's decision granting plaintiffs' motion for summary judgment against Diepholz is affirmed. The trial court's grant of Compton's motion for summary judgment against the plaintiffs is reversed and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

GREEN, P. J., and WEBBER, J., concur.